## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **THE UNITED STATES OF AMERICA, THE COMMONWEALTH OF MASSACHUSETTS,** *ex rel.* **STEPHEN ZAPPALA, M.D., OLIVIA LANNA, M.D., AND ERIC WOJCIK,**<br><br>            **Plaintiffs,**<br><br>**vs.**<br><br>**STEWARD HEALTH CARE SYSTEMS, LLC, ET AL.,**<br><br>            **Defendants.** | **CASE NO. 1-18-cv-12125-RGS** |

## PLAINTIFF-RELATORS' PETITION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES PURSUANT TO 31 U.S.C.§ 3730(d) AND <u>THE PARTIES' SETTLEMENT AGREEMENT</u>

## TABLE OF CONTENTS

**I.   BACKGROUND** .....................................................................................................**1**

   *A.   Factual And Procedural History Of This Action* ................................................*1*

     1.   Relators and Their Counsel Researched and Filed A *Qui Tam* Complaint and Assisted The Government with Its Multi-Year Investigation ...........................................1

     2.   The Parties Settled This Action and Relators Released All Intervened and Declined Claims As Consideration For An Award and Statutory Fees and Costs.................................3

   *B.   The FCA and Fee Shifting Caselaw Require that A Settling Defendant Pay A Relator's Reasonable Attorneys' Fees and Costs.*......................................................................*4*

**II.   ARGUMENT**..........................................................................................................**6**

   *A.   Relators Are Entitled to Their Reasonable Fees and Costs Under The False Claims Act...6*

     1.   The Work Performed by Counsel in This Action Was Reasonable ................................7

     2.   Relators' Claims Are Interconnected and Thus Counsel's Fees and Costs Are Compensable Under First Circuit Law ........................................................10

     3.   Relators' Highly Experienced Attorneys Have Hourly Rates Lower Than Rates Approved in This Jurisdiction ........................................................13

     4.   Counsel Have Appropriately and Conservatively Reduced Their Requested Fees........15

   *B.   The Settlement Agreement Provides For Relators To Receive Reasonable Attorneys' Fees In Exchange for Its Release Of Intervened And Declined Claims* ...........................................*16*

**III.  CONCLUSION** ...................................................................................................**18**

# TABLE OF AUTHORITIES

## Cases

*Bogan v. City of Boston*, 489 F.3d 417, 428 (1st Cir.2007) ................................................... 5

*Brewster v. Dukakis*, 786 F.2d 16, 18-19 (1st Cir. 1986) ........................................................ 6

Brown v. Gillette Co., 723 F.2d 192, 192-93 (1st Cir. 1983) ............................................ 17, 18

Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 489 (1st Cir.1989) ................................... 17

Bushkin Assocs., Inc., v. Raytheon Co., 815 F.3d 142, 146 (1st Cir. 1987) ........................... 17

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252, 130 S.Ct. 2149, 176 L.Ed. 2d 998 (2010),... 5

*Hensley v. Eckerhart*, 461 U.S. 424,  437 n.12 (1933) ............................................................. 6

*Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011) ...................................... 5

*Muehe v. City of Bos.*, 569 F. Supp. 3d 80, 85 (D. Mass. 2021) ............................................. 6

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ............................................................................................................. 4

*Perez-Sosa v. Garland,* 22 F.4th 312, 324 (1st Cir. 2022) .................................................... 4

*Ruckelhaus v. Sierra Club*, 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) ...... 5, 7

Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Circ. 1995) .............. 17

*U.S. ex rel. Lowell and Sanborn v. Athena Healthcare Inc*, 56 F.4th 152 (1st Cir. 2022)..........4, 11, 13, 16

*United States v. AthenaHealth, Inc.,* 2022 WL 658654, at *7 (D. Mass. Mar. 3, 2022)...................... 4, 13

*Walsh v. Bos. Univ.*, 661 F. Supp. 2d 91, 105 (D. Mass. 2009) ............................................. 5

## Statutes

31 U.S.C. § 3730(b)(2) ............................................................................................................ 8

31 U.S.C. § 3730(d) ..................................................................................................... 1, 4, 13

31 U.S.C. §3729 ....................................................................................................................... 8

## Other Authorities

11 False Claims Act and Qui Tam Quarterly Review 17-19 (Oct. 1997) .................................. 9

2 Recent Cases Impacting False Claims Act Litigation and Investigations Deserve the Attention of Health Care Providers and Private Equity Investors, National Law Journal, October 15, 2019 ...................... 3

S. Rep. No. 99-345 at 29, 1986 U.S.C.C.A.N. 5266, 5294 ...................................................... 6

## Rules

Fed.R.Civ.P. 9(b) ..................................................................................................................... 8

Plaintiff-relators Stephen Zappala, M.D., Olivia Lanna, M.D., and Eric Wojcik ("Relators"), having successfully blown the whistle on Defendants' False Claims Act ("FCA") violations, respectfully request that this Court order Defendants to pay their statutorily-mandated attorneys' fees, costs, and expenses.[1] The FCA's express mandate that settling Defendants pay a relator's reasonable attorneys' fees and costs is triggered when relators are awarded a share of the settlement funds, as the Relators were here.  31 U.S.C. § 3730(d). In addition, the Settlement Agreement executed by all parties in this action contained a full release by Relators of both their intervened and declined claims as consideration for their receipt of an award and right to their statutory fees. Under controlling law, Relators are therefore entitled to receive their reasonable attorneys' fees and costs for work performed on all claims asserted in their *qui tam* complaint and released by the Settlement Agreement.

Relators seek payment of their attorneys' fees in the amounts of $830,005.00 for attorneys at Cohen Milstein Sellers & Toll PLLC, and $398,032.50 for attorneys at Arrowood LLP; and costs in the amounts of $1,343.75 (Cohen Milstein) and $493.59 (Arrowood). Relators anticipate further fees and costs related to the filing of this Petition and will submit those at a later date.

# I. BACKGROUND

## A. Factual And Procedural History Of This Action

### 1. Relators and Their Counsel Researched and Filed a *Qui Tam* Complaint and Assisted the Government with Its Multi-Year Investigation

Relators and their experienced FCA counsel engaged in months of fact and legal research that culminated in the October 11, 2018 filing of their *qui tam* lawsuit (the "Complaint") alleging

---

[1] The attorneys' fees, costs, and expenses provided for by 31 U.S.C. § 3730(d) are referred to herein as "fees and costs" or "statutory fees."

that Defendants violated the FCA[2] through the payment of kickbacks that financially and psychologically pressured providers to refer patients for services within Defendants' network. Relators also alleged that Defendants rewarded compliant physicians with sham call-coverage contracts and below-market leases in violation of the Stark Law. Relators further alleged that Defendants offered these kickbacks and payments in order to meet Medicare's Accountable Care Organization ("ACO") participation and payment metrics and requirements, while Defendants (a) provided inadequate healthcare services; (b) overprescribed and under-managed opioid patients; and (c) recorded false and misleading healthcare data in medical records and in submissions to the federal government.

Relators' counsel, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Arrowood LLP ("Arrowood" and together with Cohen Milstein, "Counsel"), performed the useful and ordinarily necessary work of experienced FCA attorneys in the preparation and filing of a *qui tam* complaint. Counsel investigated all available facts that could support FCA violations, including the interview of witnesses. Counsel conducted all necessary legal research to support their alleged claims, including review of complex healthcare regulatory requirements. Counsel drafted pre-filing disclosures to the United States and to the Commonwealth of Massachusetts (together, the "Government"), providing the Government with materially all information on which Relators' claims were based. And Counsel drafted and filed under seal Relators' 51-page Complaint that initiated this action.

After the Complaint was filed, Counsel worked closely with the Government to provide assistance throughout its multi-year investigation of this action. This assistance was requested and provided through numerous discussions and in Counsel's written fact and legal work

---

[2] References to Relators' allegations of FCA violations include Relators' allegations that Defendants' conduct also violated the Massachusetts False Claims Act.

product. As just one example, the Government requested that Counsel investigate the liability of defendant Cerberus Capital Management LP, a private equity firm that owned and controlled the Steward chain, a complex legal question that is on the cutting-edge of FCA jurisprudence. *See, e.g., 2 Recent Cases Impacting False Claims Act Litigation and Investigations Deserve the Attention of Health Care Providers and Private Equity Investors,* National Law Journal, October 15, 2019 (https://www.natlawreview.com/article/2-recent-cases-impacting-false-claims-act-litigation-and-investigations-deserve )

**2.   The Parties Settled This Action and Relators
Released All Intervened and Declined Claims As
Consideration for An Award and Statutory Fees and Costs**

On April 27, 2022, the Government notified the Court that it had partially intervened in this action and settled with the Defendants as to certain conduct, including Defendants' admissions to FCA violations based on kickbacks and below market-rate lease agreements as rewards for referrals.

The Settlement Agreement was signed by all parties and provided that Relators would receive an award and could pursue their statutorily mandated fees and costs from Defendants. Settlement Agreement, at ¶ 4 (attached hereto as Exhibit A). As consideration, Relators agreed to release Defendants from all claims – both intervened and declined – that Relators asserted (or could have asserted) in this action. Settlement Agreement, Exhibit A at ¶ 7.

Beginning in June 2022, Relators and Defendants discussed their respective positions regarding reasonable attorneys' fees and costs. The negotiations continued for nearly a year but despite a mediation held in front of Magistrate Judge M. Page Kelley on June 29, 2023, no agreement was reached.

**B. The FCA and Fee Shifting Caselaw Require That a Settling Defendant Pay a Relator's Reasonable Attorneys' Fees and Costs**

The False Claims Act mandates that when a relator's share is paid, the relator is entitled to reasonable fees and costs. 31 U.S.C. § 3730(d)(1) and (d)(2) each provide that a relator who receives an award "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant."

Controlling law interpreting these provisions holds that a defendant must pay a relator's reasonable attorneys' fees and costs incurred litigating interrelated FCA allegations. In *U.S. ex rel. Lowell and Sanborn v. Athena Healthcare Inc*, 56 F.4th 152 (1st Cir. 2022)[3], the First Circuit upheld a district court's requirement that defendants pay a relator's reasonable attorneys' fees, costs, and expenses on interrelated intervened and declined work, even though the government settled only the intervened claims, and even though the relator had previously expressly waived his right to fees for work performed on declined claims. *Athena*, 56 F.4th at 159. The district court awarded, and the First Circuit upheld, attorneys' fees on interrelated work encompassing both the intervened and declined claims due to "potential synergies between the claims." *Athena*, 56 F.4th at 161, citing *United States v. AthenaHealth, Inc.,* 2022 WL 658654, at *7 (D. Mass. Mar. 3, 2022).

Courts must award fees for litigation work that is "'useful and of a type ordinarily necessary' to secure the final results obtained from the litigation.'" *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (citations omitted), *see also, Perez-Sosa v. Garland,* 22 F.4th 312, 324 (1st Cir. 2022). Useful

---

[3] Defendants' attorneys here represented the Defendant in the *Athena* matter.

and ordinarily necessary legal work includes "every item of service which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest' in the case at bar." *Perez-Sosa*, 22 F. 4th at 324-325 (citations omitted).

In statutes without a prevailing party requirement, such as the FCA, the Supreme Court has held that a party is entitled to reasonable fees and costs if the results indicate "some degree of success on the merits," *Ruckelhaus v. Sierra Club*, 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id.* at 688, n. 9, 103 S.Ct. 3274. The Supreme Court rejected arguments that a prevailing party requirement should be read into a statute's fee shifting language where none exists, finding that "adding that term of art to a fee-shifting statute from which it is conspicuously absent more closely resembles 'invent[ing] a statute rather than interpret[ing] one.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252, 130 S.Ct. 2149, 176 L.Ed. 2d 998 (2010), (citations omitted).

Courts calculate attorneys' fee awards using the Lodestar method, multiplying the prevailing market rate for attorneys in the relevant legal community by the number of reasonable hours expended in the representation, reduced by any hours that are duplicative, unproductive, or excessive. *United States v. Athena,* 2022 WL 658654 at *3 (D.Mass. Mar. 3, 2022), citing *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011). When there are separate claims that "arose from the same common core of facts or were based on related legal theories," the "rationale for discounting hours spent on unsuccessful claims does not apply." *Walsh v. Bos. Univ.*, 661 F. Supp. 2d 91, 105 (D. Mass. 2009), citing *Bogan v. City of Boston*, 489 F.3d 417, 428 (1st Cir.2007) (attorneys' fees in an ADA case).

While timesheets must be complete, "[p]laintiff's counsel ... is not required to record in

great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424,

437 n.12 (1933). Rather, "counsel should identify the general subject matter of his time

expenditures." *Id*.  "So long as time entries describe 'the kind of activity (e.g., 'spoke

w/'…'drafted letter'…), as well as the other person or group involved, and, usually, the

subject matter …the court has 'the necessary keys to testing [the entry's] reasonableness.'"

*Muehe v. City of Bos.*, 569 F. Supp. 3d 80, 85 (D. Mass. 2021), citing *Brewster v. Dukakis*,

786 F.2d 16, 18-19 (1st Cir. 1986).


II.  **ARGUMENT**

    A.  **Relators Are Entitled to Their Reasonable**
        **Fees and Costs Under the False Claims Act**

      The FCA mandates that Defendants pay Relators' reasonable attorneys' fees and costs

when Relators received an award, and the Complaint contains intervened and declined claims

that are inextricably interwoven. Relators' compensable fees and costs include those related to

the fee negotiations and the instant Petition for Fees, Costs, and Expenses to this Court.

      When Congress amended the FCA in 1986, it knew that the "unavailability of attorney's

fees inhibits and precludes many private individuals, as well as their attorneys, from bringing

fraud suits."  S. Rep. No. 99-345 at 29, 1986 U.S.C.C.A.N. 5266, 5294. These amendments made

"the statute a more useful tool against fraud in modern times…"  by "increasing the incentives,

financial and otherwise, for private individuals to bring suits on behalf of the Government," and

were intended to reward a "coordinated effort of both the Government and the citizenry [to]

decrease this wave of defrauding public funds."  S. Rep. No. 99-345 at 2. A relator's ability to

recoup attorneys' fees and costs from defendants is a significant incentive for relators and their

attorneys to proceed with an action, particularly where – as here – relator's counsel is paid on a

contingent basis and only receives compensation if a successful outcome is obtained.

### 1.  <u>The Work Performed By Counsel In This Action Was Reasonable</u>

Counsel's work in developing and pursuing all claims in this matter, both those in which the Government intervened and those it declined, was reasonable and of a type ordinarily necessary to secure the final results obtained in this action. Defendants must compensate Relators for their reasonable attorney's fees and costs on all claims since, in addition to receiving an award, Relators obtained "some degree of success on the merits," *Ruckelhaus,* 463 U.S. at 694, and performed useful and ordinarily necessary work to secure this result. *Del. Valley Citizens' Council*, 478 U.S. at 561.

Counsel have documented in their timesheets precisely the type and amount of legal work that is useful and ordinarily necessary to obtain a successful outcome and an award for their clients. Based on each attorney's deep experience in FCA and similar or related litigation, Counsel reasonably believed at the time the work was performed, and hindsight confirms, that it was necessary and important to undertake such work in order to advance and protect the Relators' interests in this action.

*Preparing and Filing the Complaint*

It is appropriate and prudent for relators' attorneys to perform substantial pre-filing investigation of all potential FCA claims that can be asserted, in order to maximize the recovery for the government and their clients' awards.

In the present action, Counsel began their pre-filing investigation by diligently interviewing each Relator and performing their own investigation of the information and documents that each Relator possessed. In fact, this pre-filing work necessitated numerous communications between Relators and Counsel, and among Counsel, that were useful and of a type ordinarily necessary in an FCA case. Counsel communicated regularly to assess and

analyze the factual and legal strengths and weaknesses of Relators' claims in order to ensure that all claims asserted were persuasive and accurate. These communications ensured that, among other things, (1) the Complaint alleged that actual false claims were submitted that were knowingly false (31 U.S.C. §3729); (2) the Complaint explained these false claims in sufficient detail to comply with Fed.R.Civ.P. 9(b); (3) no public disclosures had occurred (*see* 31 U.S.C. § 3730(e)(4)); and (4) an initial disclosure was made that substantially disclosed all material evidence and information the Relators possessed. (*see* 31 U.S.C. § 3730(b)(2)).

Counsel drafted the 51-page Complaint, alleging therein all FCA claims of which the Relators were aware arising from Defendants' pressure on providers to produce referrals and cost savings, including kickbacks and Stark Law violations, and the resultant substandard care delivered to patients.

This pre-filing investigation and the filing and drafting of the Complaint encompassed 266.6 hours for Cohen Milstein and 80.4 hours for Arrowood.

*Assisting the Government's Investigation*

Once a *qui tam* complaint is filed, it is appropriate and prudent for relators' attorneys to engage frequently with the government and to provide any and all useful assistance that could further the government's investigation of the alleged claims. This ongoing assistance increases the likelihood that the government will intervene in the action[4], and intervention dramatically increases the likelihood of a recovery.[5] Counsel provided this type of assistance consistently throughout the Government's multi-year investigation.

The government has limited resources to investigate and prosecute FCA fraud and often requests and relies on relators' attorneys to provide litigation support during the period in which

---

[4] The government only intervenes in approximately 20% of *qui tam* actions.
[5] In 2021, FCA settlements in intervened cases were 3.5 times larger than in cases the government declined.

a *qui tam* action is under seal. The importance to the government of this assistance from relators'

attorneys is reflected in its inclusion as a factor considered in the Department of Justice

guidelines for determining the size of a relator's award. *See,* 11 False Claims Act and *Qui Tam*

Quarterly Review 17-19 (Oct. 1997).

In this action, Counsel provided the Government with ongoing fact and legal resources

via written communications and numerous telephone conferences. An example of this assistance

was Counsel's response to the Government's request that they investigate and analyze the FCA

liability of defendant Cerberus. The nature and scope of liability for private equity firms that own

and manage healthcare portfolio companies is a novel and complex FCA issue. Counsel invested

substantial resources (its own time and research, and work with an expert) to provide the

Government with a memorandum on this timely and important issue.[6]

The provision of assistance to the Government during its multi-year investigation

encompassed 365.6 hours for Cohen Milstein and 672.2 hours for Arrowood.

*Monitoring Relevant Developments*

Relators are often retaliated against, and this case was no exception. Employment-related

discussions are often a necessary part of FCA work when a relator is a current or former

employee of a defendant company. In the present case, one relator had serious workplace

retaliation issues that were the subject of a separate lawsuit in which the plaintiff was represented

by Arrowood. Discovery in that lawsuit was extremely relevant to this action and Counsel

regularly provided evidence and careful analyses of such evidence to the Government.

It is also important that relators' attorneys stay up-to-date on new developments in FCA

jurisprudence and enforcement. It is common that the same or similar type of FCA violations or

---

[6] This project alone required over 94.8 attorney hours and 26 legal assistant hours.

fact patterns in a *qui tam* action will arise in other FCA cases or settlements, and these circumstances can inform relators' attorneys about theories of FCA liability or damages that may be useful in a given case. Counsel performed this type of FCA monitoring throughout the pendency of this action and used the information so obtained to refine their approach to Relators' claims.

*Negotiating the Settlement Agreement*

Relators' attorneys, like all attorneys, must ensure that a settlement agreement effectively protects their clients. In a fee-shifting case, attorneys must aggressively protect their clients' rights to the full amount of attorneys' fees, costs, and expenses that they are owed under the law. The negotiation and execution of the Settlement Agreement encompassed (up to July 19, 2023) 164.8 hours for Cohen Milstein and 35.1 hours for Arrowood.[7]

**2.   Relators' Claims Are Interconnected and Thus Counsel's Fees and Costs Are Compensable Under First Circuit Law**

Reasonable attorney time working on declined FCA claims that are interconnected to intervened claims is compensable in this Circuit. The Relators' intervened and declined claims are factually and legally intertwined and Counsel's time spent on both sets of claims is compensable under *Athena.*

*Athena* expands a defendant's liability to pay fees, costs, and expenses for attorney work on declined claims. In *Athena*, the relator sought payment of attorneys' fees relating to both intervened and declined claims. The Court ordered that the defendant was responsible to pay attorneys' fees for work not only on the intervened claims but also on certain of the declined claims, specifically holding that fees from interrelated work on both claims are compensable due

---

[7] Relators' attorneys' fees, costs and expenses post-July 19, 2023 will be the subject of an additional submission at a later date.

to "potential synergies between the claims." *Athena*, 56 F.4th at 161. Notably, the Court ordered payment of fees for declined claims even though the relator had previously waived his right to fees for the declined claims but then argued his right to those fees on appeal. *Athena*, 56 F. 4th at 156.

The case's intervened and declined claims contained interrelated facts. Relators' Complaint alleged that Relators worked for Defendants and witnessed an excessive push for in-house referrals regardless of whether the care Defendants provided was appropriate. Relators further alleged that Defendants' focus on referrals in part involved paying kickbacks to certain physicians and sham contracts and below market rate leases to other physicians. Relators also alleged that they witnessed substandard care, and that Defendants ignored this substandard care while focusing on referrals instead as well as the prevention of patient "leakage" to physician practices outside of Defendants' employment and control.

The case's intervened and declined claims had different legal theories. The intervened claims alleged violations of the AntiKickback Statute and the Stark law. To allege AKS violations, a relator must allege that the defendant (a) solicited or offered (b) renumeration of any kind (c) in exchange for the referral of a patient (d) for services to be paid for by a federal healthcare program. To make these allegations, a relator must have evidence of each of the four requirements.

To allege a Stark law violation, a relator must have sufficient facts to allege that the defendant (a) referred a (b) Medicare or Medicaid patient to a (c) health services provider (d) in which the referring entity has a financial interest. In order to prove a Stark violation, a relator must have evidence of each of the four requirements.

AKS and Stark violation allegations, such as those contained in the intervened claims,

require significantly more intricate and complex facts, and more legal research, than a claim for worthless services. The declined claims alleged that worthless services were performed. In order to allege worthless services, a relator must have sufficient facts to allege that the services were performed but were not of a sufficient standard as to provide adequate medical care. These declined claims need significantly less legal research and were based mostly on the Relators' facts. As a result, the declined claims were less factually and legal complex than the intervened claims.

Thus, the Relators' intervened and declined claims are intertwined, mandating payment of all reasonable fees. Relators' intervened claims alleged that Relators were pressured to refer patients, because Defendants' ACO model caused Defendants to demand referrals. Relators alleged that they witnessed referral sources being rewarded with kickbacks in the form of sham contracts and below market-rate leases in exchange for referrals. The declined claims alleged that Defendants' push to increase referrals resulted in substandard and worthless patient care, in the form of substandard care for patients, improper renewed prescriptions of opioids and false information being placed in patient charts and submitted to CMS. Relators' factually intertwined intervened and declined claims both allege that Defendants' kickbacks and payments encouraged ACO referrals while preventing patient "leakage" and disregarding quality care.

Relators' claims are also based on interrelated legal theories. The intervened claims allege anti-kickback and Stark Law violations resulting from Defendants' push to meet ACO participation and payment metrics and requirements. The declined claims allege, under the theory of worthless services, that Steward's focus on meeting ACO metrics resulted in substandard care. The intervened claims and theories were substantially more complex than

those in the declined claims[8] (*see, pages 8-9, supra*), but both sets of claims benefitted from Counsel's interrelated drafting, research, and advocacy work.

In addition, Relators did not waive their right to fees on the declined claims, as did the relator in *Athena*. The Settlement Agreement (Exhibit A at ¶ 4) specifically provided for Relators' right to fees on *all* claims, both intervened and declined, as provided by 31 U.S.C. § 3730(d).

### 3.  Relators' Highly Experienced Attorneys Have Hourly Rates Lower Than Rates Approved in This Jurisdiction

Highly experienced attorneys provide substantial benefits to relators because they are skilled and knowledgeable about the unique aspects of FCA jurisprudence and procedure, as well as being adept at collaborating with government attorneys to increase the ultimate chances of a successful outcome.  Counsel here have extraordinary legal experience, including more than half a century of combined work representing relators in FCA cases, and have hourly rates that are lower than rates commonly approved in this jurisdiction.

In the *Athena* district court opinion, the court approved 2021 rates of $1,060 per hour for attorneys with over 25 years' experience, $900 per hour for attorneys with 15 to 24 years' experience, $650 per hour for attorneys with 5 to 14 years' experience, and $490 per hour for attorneys with zero to 4 years' experience. *See, Athena,* 2022 WL 658654 at *7.

Ms. Markey and Mr. Azorsky (*see,* Exhibits B-3 and B-1*)* each have forty years of legal experience, and Mr. Preston has twenty-three years of legal experience. Each has over twenty years' experience representing relators in FCA cases. Ms. Arrowood (*see,* Exhibit B-2) has over 40 years of successful complex litigation trial experience, and her partners have over 20 years of

---

[8] In *Athena,* the court chose not to compensate more attorney time for the declined claims in part because the declined claims were significantly more complex than the intervened claims. *Athena,* 56 F.4th at 161.

Case 1:18-cv-12125-RGS   Document 72-1   Filed 08/25/23   Page 17 of 22

successful litigation experience. Ms. Arrowood's extensive jury trial experience resulted in her induction into fellowship in the American College of Trial Lawyers in 2000 and the International Academy of Trial Lawyers in 2014. Ms. Poserina (*see,* Exhibit B-4), who has worked primarily on fee issues relating to this action, has thirty-one years of legal experience and twenty-eight years of FCA experience.

The total hours, hourly rates, and resulting Lodestar for both firms, as of July 19, 2023, are as follows[9]:

| COHEN MILSTEIN ATTORNEY/STAFF | REASONABLE HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Gary L. Azorsky | 299.60 | $1075 | $322,070.00 |
| Jeanne M. Markey | 242.60 | $1075 | $260,795.00 |
| Casey M. Preston | 109.30 | $920 | $100,556.00 |
| Regina D. Poserina | 138.95 | $950 | $132,002.50 |
| Raymond Sarola | 5.30 | $840 | $4,452.00 |
| (Paralegal) Cris Fiore | 4.30 | $325 | $1,397.50 |
| (Legal Asst) Gwyneth Harrick | 26.25 | $310 | $8,137.50 |
| (Paralegal) George Doehne | 1.70 | $350 | $595.00 |
| COHEN MILSTEIN TOTAL | | | $830,005.50 |

| ARROWOOD ATTORNEY/STAFF | REASONABLE HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Lisa G. Arrowood | 262.10 | $750.00 | $196,575.00 |

---

[9] Both firms' attorneys' fees timesheets are attached hereto as Exhibit B.  Attorney Declarations are attached as Exhibits B-1 through 4.

| Raymond P. Ausrotas | 0.40 | $595.00 | $220.00 |
| Jed DeWick | 0.80 | $500.00 | $400.00 |
| Edward Foye | 48.20 | $475.00 | $22,895.00 |
| William F. McGonigle | 14.50 | $395.00 | $5,727.50 |
| Sarah E. A. Sousa | 457.60 | $375.00 | $171,600.00 |
| Paralegal Denise Bond | 4.10 | $150.00 | $615.00 |
| **ARROWOOD TOTAL** | | | **$398,032.50** |

Both firms have expended costs in pursuit of this action. Cohen Milstein's costs (as of July 17, 2023) are $1,343.75 and include expenses such as travel and associated costs ($1,097.49), legal research charges ($116.32), and copying and mailing charges ($114.27). Arrowood's costs (as of July 31, 2023) are $493.59 and include the filing fee of $400.00 and $93.59 in FedEx delivery charges. These costs were reasonable and necessary in the pursuit of this case.

Counsel have spent additional time and costs drafting, editing, and finalizing this petition and anticipate spending additional time reviewing Defendants' response and drafting, editing, and finalizing a reply brief. All additional time and costs not contained in the present petition will be submitted at a later date.

### 4.  Counsel Have Appropriately And Conservatively Reduced Their Requested Fees

Counsel have made appropriate and conservative reductions to their timesheets in the interest of facilitating a fair resolution to the present dispute. As noted at pages 4-6, *supra*, large-scale reductions to attorneys' hours are not required when the relators' intervened and declined claims are interrelated, but Counsel have nonetheless made reductions to the fees they presently seek.

Prior to November 2022, Cohen Milstein billed their time in quarter-hour increments. All Cohen Milstein time before December 2022 that was billed in quarter-hour increments has been reduced by 25%. Cohen Milstein reduced its travel time by one half. "Block billing" time has also been reduced.

Time spent by Counsel on its prefiling investigation, client interviews, and drafting of the Complaint cannot practicably be allocated between the intervened and declined claims due to the claims' interrelated nature. Similarly, Counsel's time spent after the filing of the Complaint communicating, conferring, and engaging in legal research is impractical to divide between each claim. However, Relators nonetheless have eliminated from their request certain attorney and paralegal time that is arguably duplicative, unproductive, or excessive.

Defendants may still argue for a considerable reduction to Counsel's requested fees based on *Athena*'s language regarding declined claims. While the *Athena* Court upheld the district court's across-the-board 50% reduction due to time spent on declined claims (*Athena*, 56 F.4th at 161), such a reduction is not appropriate here because, unlike the facts presented to the *Athena* district court, the factual and legal interrelatedness of Relators' claims make the attorney time spent on both intervened and declined claims compensable and impractical to separate, and the declined claims are far less complex than the intervened claims.[10]  In addition, unlike in *Athena*, Relators at no point waived their right to fees on the declined claims. *Id.*

**B.  The Settlement Agreement Provides for Relators to Receive Reasonable Attorneys' Fees In Exchange for Its Release of Intervened and Declined Claims**

The Settlement Agreement's plain language states that Relators dismissed their intervened and declined claims "upon Steward's full payment of the Settlement

---

[10] FCA defendants have joint and several liability, precluding any argument by Steward that it should not be liable for Counsel's fees and expenses relating to claims against its co-defendant, Cerberus.

Amount," releasing Steward from:

> any and all liability, claims, allegations…and causes of action whatsoever in law or equity, that Relators have or could have asserted against Steward in No. 18-cv-12125 [the civil action], including but not limited to any civil monetary claim that Relators have on behalf of the United States or the Commonwealth for the Covered Conduct [intervened claims] and the allegations in the Civil Action [intervened and declined claims]…

*See,* Exhibit A, Settlement Agreement at ¶ 7. This release of all claims that Relators asserted or could have asserted, both intervened and declined, was an important part of Relators' consideration in entering into this contract.

"In construing the terms of contracts that are governed by federal common law, we are guided by common-sense canons of contract interpretation." *Burnham v. Guardian Life Ins. Co.*, 873 F.2d 486, 489 (1st Cir.1989) (quotations omitted). One such canon states that contracts containing unambiguous language must be construed according to their plain and natural meaning. *See Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Circ. 1995). Contract interpretation "depend[s] on objective manifestations of consent and not on uncommunicated subjective expectation." *Bushkin Assocs., Inc., v. Raytheon Co.,* 815 F.3d 142, 146 (1st Cir. 1987). Once a contract's writing is complete, and the parties agree to certain obligations, each party has a "right to expect a fairly literal interpretation of the bargain that was struck and approved by the court." *Brown v. Gillette Co.*, 723 F.2d 192, 192-93 (1st Cir. 1983) (internal citations omitted).

The consideration each party offered and received in the Settlement Agreement is clear. Defendants obtained a release of future liability in exchange for a settlement payment to the Government and the payment of attorneys' fees and costs to Relators. In particular, Relators released their declined claims rather than continuing to pursue them through litigation.

The Settlement Agreement requires Defendants to pay all reasonable attorneys' fees and

17

costs. The Settlement Agreement does not carve out fees only for intervened claims. The Settlement Agreement does not permit Defendants to avoid their responsibility to pay reasonable fees on declined claims. The Settlement Agreement's unambiguous language shows the parties' objective manifestations of intent. Defendants intended for the Settlement Agreement to fully release them from all future legal liabilities brought by Relators, whether through intervened or declined litigation. In exchange for that release, Relators sought to obtain a relator's share, and their reasonable attorneys' fees and costs on all claims, intervened or declined.

The Defendants cannot shirk the legal responsibilities they consented to in the Settlement Agreement. Relators have the "right to expect a fairly literal interpretation of the bargain that was struck" between the parties. *Brown*, 723 F.2d at 192-93.  Defendants must pay all of the Relators' reasonable attorneys' fees and costs.

## III.    CONCLUSION

The text and purpose of the FCA, controlling precedent in this Circuit, and the express terms of the parties' Settlement Agreement all mandate that the Steward Defendants pay all of Relators' reasonable attorneys' fees, costs, and expenses. Relators and their Counsel have proactively reduced the fees presently sought in an effort to facilitate the resolution of this matter. All remaining fees, costs and expenses requested by this petition are compensable. Relators respectfully request that this Court order Defendants to pay these amounts.

Respectfully submitted,

_____

                                                _____

Gary L. Azorsky
Jeanne A. Markey
Regina D. Poserina
Cohen Milstein Sellers & Toll PLLC
100 N. 18th Street
Suite 1820
Philadelphia, PA 19103
(267) 479-5700
gazorsky@cohenmilstein.com
jmarkey@cohenmilstein.com
rposerina@cohenmilstein.com

DATED: August 25, 2023

Lisa G. Arrowood
Sarah E.A. Sousa
Arrowood LLP
10 Post Office Square, 7th Floor South
Boston, MA 02109
(617) 849-6200
larrowood@arrowoodllp.com
ssousa@arrowoodllp.com

*Attorneys for Relators*