RELATORS' PETITION FOR ATTORNEYS'

FEES, COSTS AND EXPENSES


EXHIBIT A

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"); the Commonwealth of Massachusetts ("the Commonwealth"), acting through the Medicaid Fraud Division of the Office of Attorney General and on behalf of the Executive Office of Health and Human Services ("EOHHS"), limited to its role as the single state agency for Medicaid ("MassHealth"); Steward Health Care System LLC, Steward Medical Group, Inc., Steward Health Care Network, Inc., Steward Good Samaritan Medical Center, Inc. ("GSMC"), Steward St. Elizabeth's Medical Center of Boston, Inc., Steward St. Anne's Hospital Corporation, Steward Norwood Hospital, Inc., Steward Holy Family Hospital, Inc., Steward Carney Hospital, Inc., Nashoba Valley Medical Center, A Steward Family Hospital, Inc., and Morton Hospital, A Steward Family Hospital, Inc. (collectively, "Steward"); Quincy Medical Center, A Steward Family Hospital, Inc., New England Sinai Hospital, A Steward Family Hospital, Inc., Steward Good Samaritan Radiation Oncology Center, Inc., Steward Sebastian River Medical Center, Inc., Steward Rockledge Hospital, Inc., Steward Melbourne Hospital, Inc., Steward Trumbull Memorial Hospital, Inc., Steward Sharon Regional Health System, Inc., Steward Easton Hospital, Inc., Steward Integrated Care Network, Inc., Steward National Care Network, Inc., and Steward Medicaid Care Network, Inc. (collectively, "Additional Steward Entities"); and Stephen M. Zappala, M.D., Olivia Lanna, M.D., and Eric Wojcik ("Relators") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.     Steward is one of the largest, private, for-profit health care networks in the nation and the owner of multiple hospitals in Massachusetts.  Steward owns and operates the following

hospitals in Massachusetts: GSMC; Steward St. Elizabeth's Medical Center of Boston, Inc.;

Steward Holy Family Hospital, Inc.; Steward St. Anne's Hospital Corporation; Steward

Norwood Hospital, Inc.; Steward Carney Hospital, Inc.; Nashoba Valley Medical Center, A

Steward Family Hospital, Inc.; and Morton Hospital, A Steward Family Hospital, Inc.

(collectively, "Steward's Massachusetts Hospitals").

B.      On October 11, 2018, Relators filed a qui tam action in the United States District

Court for the District of Massachusetts captioned *United States ex rel. Zappala, et al. v. Steward*

*Health Care System LLC, et al.*, No. 18-cv-12125, pursuant to the qui tam provisions of the False

Claims Act, 31 U.S.C. § 3730(b) and the Massachusetts False Claims Act, M.G.L. c. 12, § 5C

(the "Civil Action").  The relators allege in the Civil Action, among other things, that Steward

submitted or caused the submission of false claims for payment to the Medicare Program, Title

XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") and the Medicaid

Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"), by submitting or causing the submission of

claims that were tainted by violations of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-

7b(b) or the Stark Law, 42 U.S.C. § 1395nn.  Relators also named the Additional Steward

Entities.

C.      The United States contends that Steward submitted or caused to be submitted

claims for payment to Medicare and Medicaid.

D.      The Commonwealth contends that Steward submitted or caused to be submitted

claims for payment to Medicaid.

E.      Steward admits, acknowledges, and accepts its responsibility for the following

facts.  In March 2019, Steward disclosed to the United States and the Commonwealth that

Steward had "failed to charge the proper rent" on some leases that it had with physicians,

physician organizations, and non-physician organizations.  Steward disclosed that it did not

accurately charge rent to these various organizations and, as a result, may have violated the AKS

or the Stark Law.  Steward provided supplemental disclosures to the United States with respect

to the leases in May 2019, October 2019, and February 2020.  Between January 1, 2010 and

October 1, 2015, Steward leased real property to physicians and physician organizations that

were referral sources for Steward's Massachusetts Hospitals and also leased real property to non-

physician organizations that were not referral sources.  During that period, Steward failed to

collect portions of the rent that certain physicians, physician organizations, and non-physician

organizations owed to it, resulting in some of those entities paying below fair market value.

Attachment A to the Settlement Agreement sets out those physicians and physician organizations

that Steward identified as having paid less than fair market value for their leases between

January 1, 2010 and October 1, 2015.  For that period, January 1, 2010 through October 1, 2015,

Steward failed to collect $1,402,588.02 in rent from the leases in Attachment A.  (This conduct is

referred to as the "Leases Allegations.")

      F.     Steward further admits, acknowledges, and accepts its responsibility for the

following facts.  In January 2020, Steward disclosed to the United States and the Commonwealth

that GSMC had a compensation arrangement with Dr. Bahige Asaker ("Dr. Asaker") that may

have violated the AKS.  In October 2010, Steward entered into a compensation arrangement with

Dr. Asaker pursuant to which Dr. Asaker agreed to serve as GSMC's Medical Director of Post-

Acute Care Services.  The agreement described the services, including various administrative

services related to coordinating geriatric services in nursing homes and assisted living facilities

in the GSMC services area.  GSMC paid Dr. Asaker ostensibly pursuant to the compensation

arrangement from November 6, 2010 to June 23, 2016.  Dr. Asaker did not submit timesheets or

other documentation to demonstrate that he performed the services required under his

compensation arrangement and Steward has been unable to confirm that Dr. Asaker performed

the services.  During the period of the payments, Dr. Asaker referred patients to GSMC.  (This conduct is referred to as the "Dr. Asaker Allegations.")

      G.     Steward also admits, acknowledges, and accepts its responsibility for the following facts:

      (a)     GSMC entered into an Administrative Services Agreement with Brockton Urology Clinic ("Brockton Urology"), dated May 1, 2011.  That agreement obligated Brockton Urology to provide a physician to serve as the director of a "Prostate Cancer Program at Good Samaritan Medical Center."  More specifically, Brockton Urology was to administer a "Prostate Cancer Center of Excellence" at GSMC.  As of at least January 2012, GSMC has had no Prostate Cancer Center of Excellence.  Brockton Urology did not provide the services specified in the Administrative Services Agreement.  Yet, from April 2011 through December 2017, GSMC paid Brockton Urology purportedly under the agreement.  Brockton Urology provided on-call services to GSMC during that period, because GSMC did not employ urologists at the time to perform this emergency service. GSMC maintains that its payments to Brockton Urology were fair market value for urological call coverage from April 2011 through December 2017.  From April 2011 through December 2017, GSMC and Brockton Urology did not enter into any written agreements, other than the Administrative Services Agreement dated May 1, 2011 (and its amendments), for GSMC to provide Brockton Urology with financial compensation for services.  From April 2011 through December 2017, Brockton Urology referred patients to GSMC.

      (b)     From April 2011 through December 2015, GSMC paid Adult & Pediatric Urology Center P.C. ("Adult & Pediatric Urology") purportedly for cancer center services.  GSMC made these payments from April 2011 through April 2013, even though

GSMC had no written contract with Adult & Pediatric Urology.  GSMC later entered into

an Administrative Services Agreement with Adult & Pediatric Urology, on or about

March 1, 2013.  That agreement obligated Adult & Pediatric Urology to provide a

physician to serve as the director of GSMC's Prostate Cancer Program.  Adult &

Pediatric Urology never provided a physician to serve as the director of GSMC's Prostate

Cancer Program and, in fact, did not perform any of the services specified in the

agreement.  Yet, from March 2013 through December 2015, GSMC paid Adult &

Pediatric Urology purportedly under the agreement.  Adult & Pediatric Urology provided

on-call services to GSMC from April 2011 through December 2015.  GSMC maintains

that its payments to Adult & Pediatric Urology were fair market value for urological call

coverage from March 2013 through December 2015.  From April 2011 through

December 2015, GSMC and Adult & Pediatric Urology did not enter into any written

agreements, other than the Administrative Services Agreement dated March 1, 2013, for

GSMC to provide Adult & Pediatric Urology with financial compensation for services.

From April 2011 through December 2015, Adult & Pediatric Urology referred patients to

GSMC.

(This conduct described in Paragraphs G(a) and (b) is referred to as the "Prostate Cancer

Program Allegations.")

H.      The United States and the Commonwealth contend that they have certain civil

claims against Steward arising from the Leases Allegations, Dr. Asaker Allegations, and Prostate

Cancer Program Allegations, described in Recitals E, F, and G.  Such civil claims include False

Claims Act causes of action predicated on violations of the AKS and the Stark Law.

Collectively, that conduct is referred to below as the "Covered Conduct."

I.      Nothing in this Agreement is intended to be or shall be construed as in any manner waiving or prejudicing Steward's claims against Cushman & Wakefield U.S., Inc. and Cushman & Wakefield of Massachusetts, Inc. as alleged in Steward's Complaint in *Steward Health Care System LLC v. Cushman & Wakefield U.S., Inc. et al.,* Civil Action No. 2184-cv-01768 (Mass. Super. Aug. 4, 2021).

J.      Neither the United States nor the Commonwealth take any position regarding the allegations in *Stephen M. Zappala, M.D. v. Steward Health Care System, LLC et al.,* Civil Action No. 1784-cv-03686.

K.      Relators claim a share of the proceeds of this Settlement Agreement as well as their reasonable expenses, attorneys' fees, and costs pursuant to 31 U.S.C. § 3730(d) and its state analogs.  Steward reserves the right to contest Relators' claims for expenses, attorneys' fees and costs on any and all available grounds.

In consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.      Steward shall pay to the government $4,735,779.04 plus interest at a rate of 1.625% per annum from November 3, 2021 and continuing through the date of payment ("Settlement Amount"), no later than fifteen days after the Effective Date of this Agreement.  Of the Settlement Amount, $2,551,038 is restitution.  Steward will pay the Settlement Amount as follows:

(a)      Steward will pay the United States $4,270,208.67 plus interest ("Federal Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office.

(b)      Steward will pay the Commonwealth $465,570.37 plus interest
("Commonwealth Settlement Amount") by electronic funds transfer
pursuant to written instructions to be provided by the Massachusetts
Attorney General's Office.

2.      Conditioned upon the United States receiving the Federal Settlement Amount and as soon as feasible after receipt, the United States shall pay $725,935.47 plus a pro rata share of the accrued interest at the rate set forth above to Relators by electronic funds transfer (Federal Relators' Share).

3.      Conditioned upon the Commonwealth receiving the Commonwealth Settlement Amount from Steward, and as soon as feasible after receipt, the Commonwealth shall pay the Commonwealth's portion of Relators' share, $79,146.96 plus a pro rata share of the accrued interest at the rate set forth above to Relators by electronic funds transfer (Commonwealth Relators' Share).

4.      Relators claim a share of the proceeds of this Settlement Agreement as well as their reasonable expenses, attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d) and its state analogs. Steward reserves the right to contest Relators' claims for expenses, attorneys' fees and costs on any and all available grounds.

5.      Subject to the exceptions in Paragraph 9 (concerning reserved claims) below, and upon the United States' receipt of the Federal Settlement Amount, the United States releases Steward (including its predecessors, its current and former parents, divisions, subsidiaries, successors, and assigns) from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31

U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

6.     Subject to the exceptions in Paragraph 9 below, and conditioned upon the Commonwealth's receipt of Steward's full payment of the Commonwealth Settlement Amount, the Commonwealth releases Steward (including its predecessors, its current and former parents, divisions, subsidiaries, successors, and assigns) from any civil or administrative monetary claim the Commonwealth has for the Covered Conduct under the Massachusetts False Claims Act, M.G.L. c. 12, § 5A, *et seq.*; the Massachusetts Medicaid False Claims Act, M.G.L. c. 118E, §§ 40 and 44; the overpayment provisions of 130 C.M.R. §§ 450.237, 450.260(A), 450.260(I); or unjust enrichment.

7.     Subject to the exceptions in Paragraph 9 below and subject to the limitations stated in this paragraph, and upon Steward's full payment of the Settlement Amount, Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns,  release Steward, its current and former officers, directors, employees, attorneys, and other agents, and the Additional Steward Entities, from any and all liability, claims, allegations, demands, actions and causes of action whatsoever in law or equity, that Relators have or could have asserted against Steward in No. 18-cv-12125, including but not limited to any civil monetary claim that Relators have on behalf of the United States or the Commonwealth for the Covered Conduct and the allegations in the Civil Action; except that Relators' claims for reasonable attorney's fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d)(1) and/or its state analogs are not released.  Relators' limited release expressly does not include those claims Relator Zappala has asserted in *Stephen M. Zappala, M.D. v. Steward Health Care System, LLC et al.,* Civil Action No.: 1784-cv-03686 (Massachusetts Superior Court).  For clarity, nothing in this agreement shall release or in any

8

manner compromise or impair the claims in C.A. No. 1784-cv-03686, and all such claims are specifically reserved and not released.

8.      In consideration of the obligations of Steward in this Agreement and the Corporate Integrity Agreement (CIA), entered into between OIG-HHS and GSMC, and upon the United States' receipt of full payment of the Settlement Amount, the OIG-HHS shall release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against GSMC under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this paragraph and in Paragraph 9 (concerning reserved claims), below.  The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude GSMC from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct.  Nothing in this paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9, below.

9.      Notwithstanding the releases given in Paragraphs 5, 6, and 8 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States and/or the Commonwealth are specifically reserved and are not released:

    a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code), or Title IX (Chapters 58 –65C) of the Massachusetts General Laws;

    b.      Any criminal liability;

c.     Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.     Any liability based upon obligations created by this Agreement; and

f.     Any liability of individuals.

10.    Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relators' receipt of the Federal Relator's Share, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.  Conditioned upon Relators' receipt of the Commonwealth Relators' Share, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the Commonwealth, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under M.G.L. c. 12, § 5A, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

11.    Steward waives and shall not assert any defenses Steward may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, the Excessive Fines Clause in the Eighth Amendment of the

Constitution, or analogous provisions of the Declaration of Rights of the Massachusetts Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

12.     Steward fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Steward has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

13.     Steward fully and finally releases the Commonwealth of Massachusetts, its agencies, officers, agents, employees, and servants, from any claims (including for attorneys' fees, costs, and expenses of every kind and however denominated) that Steward has asserted, could have asserted, or may assert in the future against the Commonwealth of Massachusetts, its agencies, officers, agents, employees, and servants, related to the Covered Conduct, and the Commonwealth's investigation and prosecution thereof.

14.     Steward , and the Additional Steward Entities, for themselves and their successors, current and former officers, directors, employees, assigns, attorneys, other agents, fully and finally releases the Relators, together with their heirs, successors, attorneys, agents and assigns, from any and all liability, claims, allegations, demands, actions and causes of action whatsoever, known or unknown, in law or equity (including attorneys' fees, costs, and expenses of every kind and however denominated), that Steward or the Additional Steward Entities have asserted, could have asserted, or may assert in the future against the Relators, including but not limited to claims related to the Covered Conduct and the Relators' investigation and prosecution thereof.  Steward and the Additional Steward Entities specifically reserve and do not release,

11

compromise, or impair in way all potential claims and defenses against Relator Zappala in connection with *Stephen M. Zappala, M.D. v. Steward Health Care System, LLC et al.,* Civil Action No.: 1784-cv-03686.

15.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Steward agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

16.     Steward agrees to the following:

a.     <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Steward, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s), civil investigation, and criminal investigation of the matters covered by this Agreement;

(3)     Steward's investigation, defense, and corrective actions undertaken in response to the United States' audit(s), civil investigation, and criminal investigation of the matters covered by this Agreement (including attorneys' fees);

(4)     the negotiation and performance of this Agreement;

(5)     the payment Steward makes to the United States pursuant to this

         Agreement and any payments that Steward may make to Relator,

         including costs and attorneys fees; and

(6)     the negotiation of, and obligations undertaken pursuant to the CIA to: (i)

         retain an independent review organization to perform annual reviews as

         described in Section III of the CIA; and (ii) prepare and submit reports to

         the OIG-HHS

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program

(FEHBP) (hereinafter referred to as Unallowable Costs).  However, nothing in paragraph 16.a.(6)

that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that

are not allowable based on any other authority applicable to Steward.

        b.     Future Treatment of Unallowable Costs:  Unallowable Costs shall be

separately determined and accounted for by Steward, and Steward shall not charge such

Unallowable Costs directly or indirectly to any contracts with the United States or any State

Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost

statement, information statement, or payment request submitted by Steward or any of its

subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

        c.     Treatment of Unallowable Costs Previously Submitted for Payment:

Steward further agrees that within 90 days of the Effective Date of this Agreement they shall

identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors,

and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph)

included in payments previously sought from the United States, or any State Medicaid program,

including, but not limited to, payments sought in any cost reports, cost statements, information

13

reports, or payment requests already submitted by Steward or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  Steward agrees that the United States, at a minimum, shall be entitled to recoup from Steward any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.  The United States reserves its rights to disagree with any calculations submitted by Steward or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Steward's or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.       Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Steward's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

17.     This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 (waiver for beneficiaries paragraph), below.

18.     Steward agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

19.     Upon receipt of the payment described in Paragraphs 1 above, the Relators, the United States, and the Commonwealth shall promptly sign and file in the Civil Action a Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1) and subject to the terms of this Agreement (the "Stipulation").  The Stipulation shall state that: (1) claims for the allegations described in the Covered Conduct are dismissed with prejudice as to the United States and the Commonwealth; (2) all other claims in the Civil Action shall be dismissed without prejudice as to the United States and the Commonwealth; and (3) all claims in the Civil Action shall be dismissed with prejudice as to the Relators, except that Relators' claims for reasonable attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d)(1) and/or its state analogs shall not be dismissed until they are settled, adjudicated, or otherwise resolved, and the Court is so informed, and the Relators' claims for a share of the proceeds of this Agreement under the provisions of the False Claims Act, including 31 U.S.C. § 3730(d)(1), shall not be dismissed until they are settled, adjudicated, or otherwise resolved.  The Parties agree that the United States District Court for the District of Massachusetts shall have continuing jurisdiction to issue orders with regard to any disputes over the amounts for expenses, attorneys' fees and costs, and Relators' share.  Relators and Steward agree to meet and confer regarding the issue of Relators' attorney's fees, costs, and expenses, in an effort to settle that issue, and stipulate that any petition(s) for Relators' attorneys' fees, costs, and expenses, shall not be due until 120 days after the Court enters judgment.

20.     Except as provided in Paragraph 4 above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

21.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

22.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Massachusetts.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

24.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

25.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26.     This Agreement is binding on Stewards' successors, transferees, heirs, and assigns.

27.     This Agreement is binding on the Additional Steward Entities' successors, transferees, heirs, and assigns.

28.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

29.     All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

30.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 4/12/22        BY: *Jessica J. Weber*

JESSICA J. WEBER
CHARLES B. WEINOGRAD
Assistant United States Attorneys
United States Attorney's Office for the
District of Massachusetts


DATED: 4/8/22        BY: *Lisa M. Re /seg*

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

17

## THE COMMONWEALTH OF MASSACHUSETTS

DATED: 4·22·22      BY: _____

MARYLOU SUDDERS
Secretary
Executive Office of Health and Human Services


DATED: 4/25/2022      BY: _____

TOBY R. UNGER
Assistant Attorney General
Chief, Medicaid Fraud Division
Health Care and Fair Competition Bureau

18

## STEWARD – DEFENDANT

DATED: 4/12/2022          BY:  _____

**SANJAY SHETTY**
President of Steward Health Care System

DATED: 4/12/2022          BY:  _____

**MARK W. PEARLSTEIN**
**SARAH E. WALTERS**
Counsel for Steward

## <u>ADDITIONAL STEWARD ENTITIES – DEFENDANT</u>

DATED:  4/12/2022          BY:   _____

**SANJAY SHETTY**
President of Steward Health Care System


DATED:  4/12/2022          BY:   _____

**MARK W. PEARLSTEIN**
**SARAH E. WALTERS**
Counsel for Additional Steward Entities

*SUBJECT TO FEDERAL RULE OF EVIDENCE 408*

**STEPHEN M. ZAPPALA, M.D., OLIVIA LANNA, M.D., AND ERIC WOJCIK**
<u>**RELATORS**</u>

DATED: 4/6/2022   BY: _____
**STEPHEN M. ZAPPALA, M.D.**
Relator

DATED: _____   BY: _____
**OLIVIA LANNA, M.D.**
Relator

DATED: _____   BY: _____
**ERIC WOJCIK**
Relator

DATED: _____   BY: _____
**[Attorney Name(s)]**
Counsel for relators

23

**STEPHEN M. ZAPPALA, M.D., OLIVIA LANNA, M.D., AND ERIC WOJCIK**
**RELATORS**

DATED: _____          BY: _____
                               **STEPHEN M. ZAPPALA, M.D.**
                               Relator


DATED: _____          BY: _____
                               **OLIVIA LANNA, M.D.**
                               Relator

DATED: 4/12/22            BY: _____
                               **ERIC WOJCIK**
                               Relator


DATED: _____          BY: _____
                               **LISA ARROWOOD**
                               Counsel for relators

21

**STEPHEN M. ZAPPALA, M.D., OLIVIA LANNA, M.D., AND ERIC WOJCIK**
<u>RELATORS</u>

DATED: _____          BY: _____
                               **STEPHEN M. ZAPPALA, M.D.**
                               Relator

                   4/13/2022
DATED: _____          BY: _Olivia Lanna, MD_____
                               **OLIVIA LANNA, M.D.**
                               Relator

DATED: _____          BY: _____
                               **ERIC WOJCIK**
                               Relator

DATED: _4/13/2022_         BY: _____
                               Lisa G. Arrowood
                               Counsel for relators

21

**Attachment A**

| Lessor/Location | Lessee |
|---|---|
| Steward St. Elizabeth's Medical Center of Boston | Boston IVF, Inc. |
| Steward St. Elizabeth's Medical Center of Boston | Sadamu Ishikawa, M.D. |
| Steward St. Elizabeth's Medical Center of Boston | Hand Surgical Associates, Inc. |
| Steward St. Elizabeth's Medical Center of Boston | John Ritter, M.D. |
| Steward St. Elizabeth's Medical Center of Boston | Kenneth Gorson, M.D. |
| Steward St. Anne's Hospital Corporation | Alliance ENT |
| Steward St. Anne's Hospital Corporation | Arthur Daily, M.D. |
| Steward St. Anne's Hospital Corporation | Bradford, Kney, M.D., P.C. |
| Steward St. Anne's Hospital Corporation | IPC Hospitalists of New England P.C. |
| Steward St. Anne's Hospital Corporation | Rhode Island Neurosurgical Institute, Inc. |
| Steward St. Anne's Hospital Corporation | The Neurosurgery Center of Southern New England P.C. |
| Steward Norwood Hospital, Inc. | Neuro Institute of New England, P.C. |
| Steward Norwood Hospital, Inc. | Rheumatology Consultants, P.C. |
| Morton Hospital, A Steward Family Hospital, Inc. | Bristol Pulmonary and Sleep Medicine, P.C. |
| Morton Hospital, A Steward Family Hospital, Inc. | Morton Surgical, P.C. |
| Morton Hospital, A Steward Family Hospital, Inc. | PrimaCare, P.C. |
| Nashoba Valley Medical Center/198 Groton Road | Steven L. Simpson, M.D, P.C. |
| Steward St. Anne's Hospital Corporation/851 Middle Street | Pediatric Associates of Fall River |
| Steward St. Anne's Hospital Corporation/851 Middle Street | Prima Care, P.C. |
| Steward Holy Family Hospital, Inc. | Merrimack Valley PET, P.C. d/b/a New England PET Imaging System |
| Steward Holy Family Hospital, Inc. | Merrimack Valley PET, P.C. d/b/a New England PET Imaging System |
| Steward Holy Family Hospital, Inc. | Francis MacMillan Jr., MD |
| Steward Holy Family Hospital, Inc. | Michael Kutka, M.D. |
| Steward Holy Family Hospital, Inc. | Orthapaedics Northeast, P.C. |
| Steward Holy Family Hospital, Inc. | Riversong Plastic Surgery |
| Steward Holy Family Hospital, Inc. | Greater Lawrence Family Health Center, Inc. |
| GSMC | Trinity Family Medicine, LLC |
| GSMC | Marshall Carpenter, M.D. |

| Lessor/Location | Lessee |
| --- | --- |
| GSMC | Scott Dreiker, M.D. |
| Steward Carney Hospital, Inc. | Gregory Kechejian, M.D. |
| Steward Carney Hospital, Inc. | M. Lisa McHam, M.D. |
| Steward Carney Hospital, Inc./2110 Dorchester | An Phan, M.D. |
| Steward Carney Hospital, Inc./2110 Dorchester | Ashok Patel |
| Steward Carney Hospital, Inc./2110 Dorchester | Nissage Cadet |
| Steward Carney Hospital, Inc./2110 Dorchester | Resil Medical |
| Steward Carney Hospital, Inc./2110 Dorchester | Lisa McHam d/b/a Massachusetts Eye Care Assoc. |
| Steward Carney Hospital, Inc./2110 Dorchester | Gary Bolgar |
| Steward Carney Hospital, Inc./2110 Dorchester | Steven G. Werth, MD |
| Steward Carney Hospital, Inc./2110 Dorchester | John Dalton |
| Steward Carney Hospital, Inc./2110 Dorchester | Kevin McBride |
| Steward Carney Hospital, Inc./2110 Dorchester | Steven Kahn |
| 830 Oak Street | Medical Oncology and Hematology, P.C. |
| GSMC/830 Oak Street | Pediatric Healthcare Group. P.C. |
| Steward St. Elizabeth's Medical Center of Boston/280 Washington | Irving L. Weissman |
| Steward St. Elizabeth's Medical Center of Boston/11 Nevins | Diane English, M.D. |
| Steward St. Elizabeth's Medical Center of Boston/11 Nevins | Dr. Maria Falzon |
| Steward St. Elizabeth's Medical Center of Boston/11 Nevins | Bay State Urologist, Inc. |
| Steward St. Elizabeth's Medical Center of Boston/11 Nevins | Marish Tandon, MD PC |
| Steward St. Elizabeth's Medical Center of Boston/11 Nevins | New England Plastic Surgical Associates |
| Steward St. Elizabeth's Medical Center of Boston/11 Nevins | Robert Stern, MD PC |