# RELATORS' PETITION FOR ATTORNEYS' FEES, COSTS AND EXPENSES

## EXHIBIT B-1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA and the<br>COMMONWEALTH OF MASSACHUSETTS *ex rel.*<br>ZAPPALA, LANNA AND WOJCIK,<br>Plaintiffs,<br>v.<br><br>STEWARD HEALTHCARE, LLC, ET AL.<br><br>Defendants. | )<br>)<br>) **CASE No. 18-CV-12125-RGS**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF GARY L. AZORSKY
## IN SUPPORT OF RELATORS' PETITION FOR
## <u>ATTORNEYS' FEES, COSTS AND EXPENSES</u>

I, Gary L. Azorsky, declare and state as follows:

1.    I submit this declaration in support of the Petition of Relators Zappala, Lanna and Wojcik for Attorneys' Fees, Costs, and Expenses pursuant to the False Claims Act, 31 U.S.C. § 3730(d)(1) and (2). I served as co-lead counsel for the Relators in this case. This declaration is based on my own personal knowledge, and all opinions expressed herein are genuinely held, based on my knowledge and experience. If called as a witness to this action, I could and would testify competently to the following.

### PROFESSIONAL QUALIFICATIONS

2.    I am an attorney licensed to practice law in the Commonwealth of Pennsylvania and the State of New Jersey since 1983. Since 2002, I have represented relators in False Claims Act *qui tam* cases as well as whistleblowers under other statutes. Since 2012, I have done so as a partner at Cohen Milstein Sellers & Toll PLLC, Philadelphia, PA, with experienced whistleblower lawyers Jeanne A. Markey, Regina D. Poserina, Casey M. Preston, and Raymond

M. Sarola. I am the managing partner of the Whistleblower Practice and supervise the other attorneys in that group.

3.     In addition to being a member of the bar in Pennsylvania and New Jersey, I am admitted to practice in the United States Supreme Court,  the United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, and the United States District Court for the District of New Jersey.  During my forty years of law practice, I have litigated civil matters in state and federal trial and appellate courts.

4.     I graduated with a Bachelor of Arts in English from the University of Pennsylvania in 1980 and received my law degree from Cornell University Law School in 1983.  Prior to 2002, I engaged in commercial and intellectual property litigation as an associate and then partner at Mesirov Gelman Jaffe Cramer & Jamieson and later as a partner at Schnader Harrison in Philadelphia. From 2002 to 2012, I worked in private practice as a partner at the law firm Berger Montague.

5.     I joined Cohen Milstein Sellers & Toll PLLC as a partner in 2012 and started the firm's Whistleblower Practice with Jeanne Markey and Casey Preston.  For over 45 years, Cohen Milstein has fought corporate abuse, pursuing litigation on behalf of affected individuals, public entities and other institutions in cases that have raised challenging, significant and at times, novel issues. Cohen Milstein holds large corporations accountable for their actions even though they often have significantly more resources than those damaged by their misconduct. One of the premier firms in the country handling major complex plaintiff-side litigation, Cohen Milstein has over 100 attorneys in offices in Washington, DC, New York, Philadelphia, Boston, Chicago, Minneapolis, Palm Beach Gardens, and Raleigh. Over its history, Cohen Milstein has obtained many landmark judgments and settlements for individuals and businesses in the

2

United States and abroad, including but not limited to the In Re Flint Water Cases (No. 16-cv-
10444, E.D. Mich.)(landmark $626.25 million settlement between Flint residents and multiple
businesses and Government defendants, in an environmental toxic tort class action); Doe, Aceh,
Indonesia v. ExxonMobil Corporation (No. 01-1357, D.D.C.)(earlier this year, Cohen Milstein,
representing Indonesian villagers, settled a high-profile human rights lawsuit against
ExxonMobil); and National Opioids Litigation (Cohen Milstein represented the state Attorneys
General of Indiana, New Jersey and Vermont in settlements totaling $704.8 million with the
nation's three major pharmaceutical distributors).

6.   In my capacity as relator's counsel, I have represented whistleblowers in cases resulting
in False Claims Act settlement recoveries to the U.S. and states in excess of $7.6 billion. I
represented the Ven-A-Care whistleblowers in federal and state health care FCA cases against
multiple pharmaceutical companies, as well as the relators in cases against Wyeth
Pharmaceuticals, Shore Health System, Inc., and National Spine and Pain Centers, LLC, and in
cases involving defense contractors, pharmaceutical companies, for-profit colleges, and the
federal student loan program. I have represented whistleblowers nationwide in many different
judicial districts including in Massachusetts, New York, New Jersey, Florida, Pennsylvania,
Washington, D.C., Michigan, Iowa, Oklahoma, Texas and California.

7.   I have also represented whistleblowers under the whistleblower programs of the
Securities and Exchange Commission , the IRS, the Commodity Futures Trading Commission,
the National Highway Traffic and Safety Administration, and the Financial Crimes
Enforcement Network (FinCEN) of the U.S. Treasury Department . I have been recognized for
this work by LawDragon as a top plaintiff financial attorney for both 2021 and 2022.  I have
testified as an expert in False Claims Act practice in federal court in Massachusetts, and served

as an expert in False Claims Act practice in Pennsylvania state court. In 2013, I provided

guidance on the False Claims Act at a hearing before the House Judiciary Committee and

House Oversight Committee on Governmental Reform relating to the confirmation of a cabinet

nominee who had overseen False Claims Act cases as a senior attorney at the Department of

Justice. In 2014, at the request of the Vermont Attorney General's Office, I testified before the

Vermont Senate Judiciary Committee in support of the passage of the Vermont False Claims

Act. I am a member of The Anti-Fraud Coalition (formerly Taxpayers Against Fraud Education

Fund) and the Federal Bar Association's Qui Tam section.

8.    A more extensive description of my professional credentials and experience can be

found at Attachment A to this Declaration and is available on our firm's website at

https://www.cohenmilstein.com/professional/gary-l-azorsky.

## My Experiences and Familiarity With Representing Whistleblowers

9.    Based on over twenty years representing whistleblowers and *qui tam* relators, and my

interactions with *qui tam* and whistleblower attorneys, I have gained substantial familiarity with

the *qui tam* and whistleblower legal services marketplace. I am familiar with the challenges

inherent in *qui tam* litigation, as well as the specialized skills, knowledge and experience

necessary to successfully prosecute such actions, the amount of time, expenses and delays

reasonably expected to be incurred in the various stages of the litigation, the hourly rates billed

by attorneys on both sides, and the unusually substantial economic risk for relators' attorneys in

these cases.

10.    My experiences representing relators inform my perspective on the unique legal

challenges faced by *qui tam* counsel. My experiences representing the Relators in the FCA *qui*

*tam* cases U.S. *ex rel*. Ven-A-Care of the Florida Keys Inc., v. Dey Laboratories, Boehringer

4

Ingelheim Corp, Roxane Laboratories, Inc., Warrick Pharmaceuticals Corp., and Schering Plough Corporation have been particularly instructive. Our legal team included firms throughout the nation with *qui tam* expertise as well as firms with general civil litigation and complex litigation skills. There were multiple defense counsel, including large firms such as Jones Day, Kelley Drye & Warren, Kirkland & Ellis and Winston & Strawn.

11. Once the Ven-A-Care cases were unsealed, the extensive, multi-jurisdiction litigation required a demanding schedule. The litigation required close coordination and cooperation with the federal and state governments. The Relators and their legal team amended the complaints multiple times, litigated many dozens of motions on legal and discovery issues, took and defended more than 50 depositions, prepared and addressed multiple expert reports and depositions, reviewed several million pages of documents, and opposed motions to strike experts. Given the Defendants' resources and aggressive defenses, Relator's attorneys were forced to commit substantial time and resources to the litigation with no guarantee of recovering attorneys' fees and costs.

12. *Qui tam* litigation is a high-risk contingency practice for many reasons. Many complex litigation attorneys do not wish to pursue *qui tam* cases. FCA success often depends on the United States or a state Government's actions and decisions.   FCA investigations often last up to or even beyond five years, a period during which relators' attorneys are not reimbursed for their time or expenses. *Qui tam* work requires relators' counsel to work on a case even after it is filed under seal, precluding work on other matters. The Government often lacks sufficient attorney and investigator resources required to pursue complicated fraud allegations, necessitating relators and their counsel to actively assist the Government in its pursuit and resolution of an FCA case. Relators' attorneys must possess the skills and experience necessary to engage with

the Government and assist in its intervention decision.

13.    Government attorneys enlist the efforts of relators and their counsel in reviewing documents produced by *qui tam* defendant(s) and for assistance researching legal issues when they have confidence in the relators' counsel's ability to assist the investigation. When the Government asks for litigation assistance, the Government fully expects that the relator and his or her counsel will answer the call and help.

14.    False Claims Act practitioners know that the chances of recovering funds under the FCA are usually highest when the Government intervenes. Diligent, time-consuming case preparation and development before filing a complaint, and relator assistance during the investigation,  increase the likelihood of intervention. Since the United States intervenes in only approximately 20% of *qui tam* cases, relators' counsel routinely risk spending long hours on matters that may ultimately prove to be unsuccessful.

15.    In fact, several of the Department of Justice's Relator's Share Guidelines [found at  11 *False Claims Act and Qui Tam Quarterly Review,* 17-19 (Oct. 1997)] recognize relators' counsel's need to expend time assisting the Government and tie the relators' share percentage to the cooperation and assistance of the relators and their counsel.  The Department of Justice will consider increasing a relator's share: where the relator provided "substantial assistance" to the Government during the investigation; where the relator's counsel provided "substantial assistance" to the Government; and where the relator and his or her counsel "supported and cooperated with the Government during the entire" process of the case. In contrast, where a relator or relator's counsel "did not provide any help after filing the complaint or hampered the Government's efforts in developing the case…", the relator share can be decreased. These factors justify the importance of relators' attorneys expending considerable time assisting the

6

Government in its investigations.

16.    As a relator's attorney, the Government has asked my firm and our relator clients to assist in such document review, as well as in drafting document requests and interrogatories, preparing witness outlines, and other related work. When asked, we have accepted the work. We recognize that Congress intended the *qui tam* provisions of the False Claims Act to create a public-private partnership between the Government and relators. Relators' job is to assist the Government and make the partnership work. Such cooperation levels the playing field between the Government's limited resources and the defendants' significant resources devoted to each case.

17.    Cases like the Steward case, containing issues such as payments for services tainted by kickbacks and violations of the Stark statute, necessarily require extensive work by the attorneys. Based on my experience, it is my opinion that time spent by the attorneys in this case educating, cooperating with, and assisting the Government in its investigation was not only reasonable but necessary under the circumstances. Indeed, those efforts contributed to the United States' decision to intervene, and its ability to effect settlement of the case.

18.    I am familiar with the CVs, skills, experience, and reputations of Jeanne A. Markey, Regina D. Poserina, Casey M. Preston, and Raymond M. Sarola. Their CVs accurately reflect each attorney's experience, education, and background. Each of these attorneys has an expansive understanding of FCA opinions, issues and complexities. They diligently advance their clients' cases.

19.    For counsel and law firms representing whistleblowers, the statutory fee provisions of the FCA set forth in 31 U.S.C. § 3730(d) are an important factor in the decision to proceed with a case, for all of the reasons mentioned above. Congress included the statutory fee

provisions so that relators' counsel can recover for the time and costs necessarily expended in these rigorous cases.

20.   Each year, Cohen Milstein sets the attorneys', paralegals', and legal assistants' billing rates. My billing rates, and those of the Cohen Milstein and Arrowood attorneys, paralegals, and legal assistants, are in keeping with the rates of attorneys, paralegals, and legal assistants with similar experience and years in practice. For example, I have been an attorney for forty years, and have practiced FCA law for 21 years. My 2023 rate is $1,075 per hour. In 2022, a court in this jurisdiction accepted rates for experienced FCA attorneys with more than 25 years of experience at $1,060, attorneys with more than fifteen years of experience at $900 and for those with less than four years of experience at $490. *See, U.S.A. v. Athena*, 2022 WL 658654 (D.Mass. Mar. 3, 2022).

21.   Given the standards accepted by this court, the Cohen Milstein rates for Ms. Markey (forty years' experience, $1,075 rate), Ms. Poserina (thirty-one years' experience, $950 rate), Mr. Preston (twenty-three years' experience, $920 rate), Mr. Sarola (twenty-one years' experience, $840 rate), Cris Fiore (paralegal until 2020, $290 rate), Gwyneth Harrick (2020 legal intern, $310 rate) and George Doehne (paralegal, $350 rate), are within acceptable ranges.

22.   As part of this litigation, I supervised the work of Ms. Poserina, Mr. Preston and Mr. Sarola, and paralegals Cris Fiore and George Doehne.  I personally reviewed the work they performed, and the timesheets they have submitted in support of this Petition. I affirm that the work listed in the timesheets was actually performed by these individuals was necessary work and was of the highest caliber.  Each attorney's CV is attached to this Petition as Attachment B (Poserina), C (Preston) and D (Sarola), and are available at our firm's website,

https://www.cohenmilstein.com/practice-area/whistleblower-false-claims-act.

23.    I am familiar with the work, knowledge, skills, experience and reputation of

Suzanne Durrell. I have attended seminars at which she has presented the unique issues in her

cases. Ms. Durrell has an expansive understanding of the FCA's legal issues and complexities.

Ms. Durrell is considered by FCA practitioners as one of the leading *qui tam* attorneys in the

country. In connection with this declaration, I have reviewed Ms. Durrell's declaration in support

of the instant fee petition.  I am aware that her hourly rate is well within the range of rates that

are reasonable for an attorney with comparable skills and experience.

### ROLE IN THE INSTANT LITIGATION

24.    I became involved in what would become the instant litigation in 2018 when I was

contacted by Lisa Arrowood, Esquire, about a potential *qui tam* case. After meeting with her

clients Dr. Zappala, Dr. Lanna, and Mr. Wojcik, reviewing materials provided by them, and

conferring with my colleagues Jeanne Markey and Casey Preston, we agreed to serve as co-

counsel with Ms. Arrowood in the case.

25.    From that point forward, I coordinated the efforts of myself and my colleagues Markey,

Poserina, Preston, and Raymond M. Sarola to provide the most efficient and helpful services to

the Relators. *See, also*, Declarations of Jeanne A. Markey, Lisa G. Arrowood, and Regina D.

Poserina. Over the almost 4-year course of this case, Relators' counsel are jointly claiming

1,6615.70 hours of merits time, the vast majority of which was spent by myself, Ms. Markey,

Ms. Arrowood, Sarah E. A. Sousa, and Ms. Poserina.

26.    I was involved in interviewing the relators, creating and editing the pre-filing

disclosures to the Government and drafting the complaint, coordinating and preparing the

Relators for their interviews with the Government, discussions with the Government, research

of client and Government identified issues including private equity's role in FCA cases, the settlement process, and the negotiation of attorneys' fees, costs and expenses. Ms. Markey, Ms. Arrowood and Ms. Sousa were similarly involved in these issues and actions. Ms. Poserina worked on the private equity and attorneys' fees, costs and expenses negotiations.

27.    Our team assisted the Government in this investigation throughout the pendency of this case. We reviewed transcripts of the depositions of Steward personnel taken in other litigation, excerpted them for the Government, and sent them detailed analyses of the legal issues involved. Also, at the Government's request, we engaged in a thorough analysis of bases of liability of the private equity defendant Cerberus.

### THE FEES AND COSTS INCURRED IN THIS MATTER ARE REASONABLE

28.    I have reviewed the Petition of Relators Zappala, Lanna and Wojcik for Attorneys' Fees, Costs and Expenses, together with its supporting Memorandum, the Declarations of Jeanne A. Markey, Lisa G. Arrowood, and Regina D. Poserina, and the time and expense records of all Cohen Milstein and Arrowood attorneys involved in the Relators' representation. Based on my FCA and civil litigation experience, I believe that these attorneys' time spent in representation, hourly rates claimed, and the costs and expenses incurred are reasonable.

### The Hourly Rates and Costs Claimed Are Reasonable

29.    Through my contacts and relationships with *qui tam* attorneys throughout the United States, I have become aware of the usual and customary attorney billing rates for complex *qui tam* actions, and the prevailing market for attorneys' fees in the national FCA community in which I practice.

30.    In this fee petition, the hourly rates claimed are within the range of rates charged and claimed by attorneys with the same level of skills and experience possessed by the Cohen Milstein attorneys and staff. These rates take into account the market value of Cohen Milstein's specialized skills and experiences, as well as the efficiency of our contributions at key stages of the case, and the contingent nature of the representation.

31.    Cohen Milstein derived the attorney and staff rates requested in this fee petition by evaluating the current general marketplace for non-contingent legal services on complex federal litigation, the premium commanded in the national marketplace for specialized False Claims Act experience, and the expectations of compensation needed to attract counsel to undertake contingent cases.

32.    I am aware of the hourly billing rates being claimed by the other attorneys in this case and in this District. From my role in this case, my work as head of the Cohen Milstein whistleblower practice, the time sheets submitted, and the Declarations, I am familiar with the qualifications and work of attorneys Arrowood, Markey, Poserina, Preston, Sarola, Ausrotas, DeWick, Foye, McGonigle, and Sousa, and paralegals Fiore, Doehne, and Bond, and legal intern Harrick, and consider them to possess an exceptional level of skill, expertise, judgment, and ethics.

33.    In my opinion, the rates claimed for these lawyers and legal assistants are commensurate with their level of seniority and experience and well within the prevailing range of rates charged by lawyers and legal assistants in the national and local market of those firms handling complex litigation and complex FCA litigation. The hourly rates are consistent with the rates charged by attorneys of comparable years of experience, skill, qualifications, and reputation in complex litigation and in the prevailing market for work comparable to that performed by the

11

attorneys in this case.

34.   Furthermore, most *qui tam* cases are defended by an elite group of defense law firms. In my firm's cases, the lawyers representing defendant(s) have come from leading law firms in large cities across the country, including Washington, D.C., New York City, Philadelphia, Boston, Baltimore, Chicago, Dallas, Los Angeles, and Atlanta. Defense lawyers work nationwide representing defendants regardless of where the case is filed because of their reputation and expertise in this unique practice area. The hourly rates of defense counsel in these cases commonly exceed relators' counsels' hourly rates. In this case, the Defendants employed a large law firm in Boston with offices in thirteen other locations through the U.S. and nine other locations throughout the world.  As noted by Ms. Durrell, the Defendants' lawyers' 2020 rates were between $1,135 and $1,195 for lawyers with 10 to 15 years' experience.

35.   The hourly rates claimed by Relators' counsel in this application are appropriate in light of: (a) the novelty and complexity of the issues; (b) the special skill and experience of the attorneys; (c) the time and labor required; (d) the quality of the representation; (e) the preclusion of other employment; (f) the "undesirability" of the case; and (g) the overall results obtained. A case of this type requires an extraordinary commitment of time and labor, which the attorneys in this case made over a four-year period from prefiling work in 2018, active assistance to the Government from 2018 through 2021, to settlement in 2022.

### The Time Spent was Reasonable and Necessary

36.   A true and accurate accounting of the total amount of time requested by counsel for Relators over the years of investigating and pursuing this action is set forth in Exhibit B.  These documents include time records for myself and my colleagues at Cohen Milstein.

37.     The attorneys' time spent is both reasonable and customary for a case of this complexity and length. In arriving at this opinion, I have considered the effort that *qui tam* attorneys devote to other FCA cases, and my own experience representing relators.

38.     The case's intervened and declined claims contained interrelated facts. The facts alleged that Relators worked for Defendants and witnessed an excessive push for in-house referrals, whether or not the care Defendants provided was appropriate. Relators saw that Defendants' focus on referrals resulted in kickbacks to certain physicians, and the provision of below market rate leases to other physicians. Relators allege that they witnessed substandard care, and that Defendants ignored this substandard care due to their untoward focus on referrals.

39.     The case's intervened and declined claims had different legal theories. The intervened claims alleged violations of the AntiKickback Statute and the Stark law.  To allege AKS violations, a relator must allege that the defendant (a) solicited or offered (b) renumeration of any kind (c) in exchange for the referral of a patient (d) for services to be paid for by a federal healthcare program. To make these allegations, a relator must have evidence of each of the four requirements.

40.     To allege a Stark law violation, a relator must allege that the defendant (a) referred a (b) Medicare or Medicaid patient to a (c) health services provider (d) in which the referring entity has a financial interest. In order to prove a Stark violation, a relator must have evidence of each of the four requirements.

41.     AKS and Stark violation allegations, such as those contained in the intervened claims, are, as described, significantly more intricate and complex than a claim for worthless services.

42.     The declined claims alleged that worthless services were performed. In order to allege worthless services, a relator must allege that the services were performed but were not of a

medical level as to provide adequate care.

43.    The time claimed for the services of myself and my Cohen Milstein colleagues, totaling some 828 hours over 5 years, includes time spent pursuing our fees, costs, and expenses. Our time entries are based on contemporaneous records and have been reviewed and already reduced in an exercise of billing judgment. Our fees, costs and expenses include time incurred on this fee application. We will continue to incur time on matters relating to this fee application which we will track and review for billing judgment before submitting to the court during these proceedings.

44.    As part of the work performed in this matter, our firm spent approximately 266.6 hours working on this matter before the complaint was filed.  That time includes approximately 85.5 hours of my time, 100.90 hours of Jeanne Markey's time, and 79.70 hours of Casey Preston's time, all spent interviewing the clients, researching the issues, strategizing amongst ourselves and with our co-counsel, and drafting and editing the complaint and disclosure. This work was reasonable and ordinarily necessary in a False Claims Act case, in order to produce the pleadings and documents needed to proceed with an FCA case.

45.    As part of the work performed in this matter, our firm spent approximately 365.60 hours working on this matter while the case was under seal. That time includes approximately 167.10 hours of my time, 130.70 hours of Jeanne Markey's time, 25.85 hours of Casey Preston's time, and less than 12 hours of time between Raymond Sarola and Regina. Poserina. This time was crucial to the case, as the government requested assistance in various investigatory tasks, including but not limited to research regarding the role of private equity in healthcare and FCA cases. Legal intern Gwyneth Harrick performed 26.25 hours of legal research and writing regarding private equity, under the direction and supervision of Ms. Markey. This work was

reasonable and of the type ordinarily necessary in a False Claims Act case in order to assist the government with its investigation.

46.     As part of the work performed in this matter, our firm spent approximately 195.80 hours working on settlement and Relators' attorneys' fees, costs, and expenses issues. That time includes approximately 47 hours of my time, 131.45 hours of Ms. Poserina's time, and less than 16 hours spent by Ms. Markey, Mr. Preston, and Mr. Sarola. This time, including time spent preparing for and engaging in mediation, was reasonable and of the type ordinarily necessary to protect the Relators' interests in a fair, reasonable and adequate settlement, and the Relators' rights to obtain their reasonable attorneys' fees, costs, and expenses.

47.     As required by First Circuit caselaw, we have removed time that is duplicative, unproductive or excessive, cut travel time in half, and reduced Cohen Milstein attorney time before November 28, 2022, by 25% to account for quarter hour billing.

**The Costs Incurred Are Reasonable**

48.     The costs requested for Cohen Milstein and Arrowood (see Declarations of Poserina and Arrowood and related Exhibits) are reasonable for a *qui tam* case of this complexity and duration, and in view of the underlying factual and legal issues.

49.     I have reviewed the costs incurred (which total $1,318.79 through July 17, 2023) and believe they are reasonable and were necessarily incurred for travel to meetings and for legal research undertaken not only in developing the case but also at the express request of the Government in its investigation of the case. A true record of those costs is attached to the Petition as Exhibit B. As noted above, any additional fees and costs incurred in conjunction with this fee petition will be tracked, reviewed for billing judgment, and submitted to the court

at a later time in these proceedings.

**CONCLUSION**

I declare under penalty of perjury that the foregoing is true and correct.


Executed on August 25, 2023

Gary L. Azorsky
_____
Gary L. Azorsky

RELATORS' PETITION FOR ATTORNEYS'

FEES, COSTS AND EXPENSES


EXHIBIT B-1-a

# CURRICULUM VITAE
## OF
## GARY L. AZORSKY

---

**PRACTICE**

Partner and  Co-Chair of the Qui Tam Practice Group, Cohen Milstein Sellers & Toll, PLLC, Philadelphia, PA. In his nation-wide practice, Mr. Azorsky has helped to recover more than $7.5 billion for federal and state governments, including hundreds of millions of dollars for whistleblower clients. He was named to the 2021 and 2022 Lawdragon 500 Leading Plaintiff Financial Lawyers List.

**EDUCATION**

University of Pennsylvania, B.A.
Cornell Law School, J.D.

**BAR ADMISSIONS**

United States Supreme Court
United States Court of Appeals for the Third Circuit
Eastern District of Pennsylvania
District of New Jersey
Commonwealth of Pennsylvania

**PROFESSIONAL EXPERIENCE**

Mr. Azorsky most recently represented the whistleblower in an action that resulted in the recovery in 2022 from Allianz Global Investors U.S. LLC of $6.5 billion by the U.S. Department of Justice and the U.S. Securities and Exchange Commission. He also served as co-lead counsel in the qui tam action against the pharmaceutical company Wyeth pending in the District of Massachusetts, in which more states joined to intervene along with the government of the United States than had ever intervened in a qui tam action in history. (*United States of America et al., ex rel. Lauren Kieff v. Wyeth,* No. 1:03-CV-12366-DPW (D. Mass.)). The $784.6 million settlement in that case was the seventh-largest False Claims Act recovery on record and the second-largest recovery in history involving a single class of drugs. Mr. Azorsky worked alongside Department of Justice attorneys and state Attorneys General throughout the 12-year pendency of the case.

Mr. Azorsky has also represented whistleblowers in False Claims Act cases involving defense contractors, off-label marketing and misbranding by pharmaceutical companies, violations of the federal anti-kickback statute, property appraisal fraud and fraud in connection with for-profit colleges and student loan programs. In addition, Mr. Azorsky represents whistleblowers in tax fraud claims against large and small corporations through the IRS Whistleblower Office, as well as whistleblowers alleging violations of the federal securities laws and the Foreign Corrupt Practices Act filed with the SEC Whistleblower Office.

Mr. Azorsky also served as co-counsel for the whistleblower on the following Representative matters:

\*   *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey Laboratories, et al*., Civil Action No. 05-11084 (D. Mass.) ($280

million settlement in December 2010)

    \*    *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc.*
*v. Boehringer Ingelheim Corp., et al.*, Civil Action No. 07-10248 (D. Mass)
($280 million settlement in December 2010)

    \*    *Florida ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim*
*Corp., et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($6.5 million
settlement with Dey Laboratories, Inc. in March 2010)

    \*    *Florida ex rel. Ven-a-Care of the Floria Keys, Inc. v. Boehringer Ingelheim*
*Corp., et al.,* Civil Action. No. 98-3-32A (Leon Cty., Fla.) ($9.57 million
settlement with Dey Laboratories, Inc. in March 2010)

    \*    *Florida ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim*
*Corp., et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($8.5 millon
Settlement with Boehringer Ingelheim in December 2009)

    \*    *Texas ex rel. Ven-a-Care of the Florida Keys, Inc. v. Roxane Laboratories,*
*Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Ben Venue Laboratories,*
*Inc. and Boehringer Ingelheim Corporation,* Civil Action No. GV3-03079
(Travis Cty., Tex.) ($10 million settlement with Boehringer Ingelheim in
November 2005)

    \*    *Texas ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., Dey, L.P.*,
Civil Action No. GV002327 (Travis Cty., Tex.) ($18.5 million settlement
with Dey Laboratories, Inc. in June 2003)

Prior to joining Cohen Milstein, in addition to his whistleblower/False Claims practice,
Mr. Azorsky was actively involved in groundbreaking civil rights, commercial and
intellectual property litigation, including internet and software industry-related litigation.

**PROFESSIONAL**
**ENGAGEMENTS**

Mr. Azorsky regularly speaks before professional audiences regarding the federal and
state False Claims Acts. He is a member of the Taxpayers Against Fraud, a non-profit,
public interest organization dedicated to combatting fraud against the federal
government through the promotion and use of the Federal False Claims Act and its
qui tam provisions.

-- participated in the ABA seminar "State and Federal False Claims Acts:
A Major Tool for Uncovering Financial Fraud".

-- testified before the Vermont Senate Judiciary Committee for the advancement of a
Vermont State False Claims Act.

-- testified as an expert in False Claims Act practice in the U.S. District Court for the
District of Massachusetts in 2018 in the matter of *U.S. ex rel. Kieff v. Wyeth.*

-- provided expert guidance on the False Claims Act for the Joint Hearing.
of the House Oversight and Judiciary Committees Concerning Perez Actions with
respect to St. Paul qui tam cases.

# RELATORS' PETITION FOR ATTORNEYS' FEES, COSTS AND EXPENSES

## EXHIBIT B-1-b

COHEN MILSTEIN



# Regina D. Poserina

OF COUNSEL
Philadelphia, PA

**t:** 267.479.5700
**f:** 267.479.5701
**rposerina@cohenmilstein.com**


**Practice Areas:**

Whistleblower / False Claims Act


**Admissions:**

New Jersey

Pennsylvania


**Education:**

Temple University James E. Beasley School of Law, J.D., 1992

Villanova University College of Nursing, B.S., 1984


**Regina D. Poserina** is of counsel at Cohen Milstein and a member of the Whistleblower/False Claims Act practice.

Ms. Poserina represents whistleblowers in qui tam cases brought throughout the United States under the federal and state False Claims Act statutes against recipients of government funds. A retired registered nurse, Ms. Poserina focuses predominantly on representing whistleblowers in healthcare fraud. She also has extensive experience in whistleblower actions related to fraud against other governmental programs, including the Department of Defense, Department of Housing and Urban Development, Department of Food Stamp/Agriculture, Department of Small Business Administration, and Department of Education.

Ms. Poserina's representative cases, currently under seal, include representing:

- A former executive in a case involving substandard medical products and kickbacks under the Medicare and Medicaid programs.
- A provider in a case involving alterations of electronic health records resulting in upcoding of Medicare patient submissions.
- A former executive in a case involving altered scientific data resulting in false payments from Medicare.
- A former executive in the tech industry in a case involving misrepresentation of technical abilities in a CDC grant program.
- A former Department of Defense contractor in a case involving overbilling on a DOD contract.
- Home health nurses in a case involving kickbacks for the provision of services under the Medicare and Medicaid programs.

Prior to joining Cohen Milstein, Ms. Poserina was of counsel at a highly regarded False Claims Act and employment litigation firm in New Jersey and Pennsylvania, and was the sole proprietor of her own firm, focusing on False Claims Act and employment litigation.

Ms. Poserina has argued cases before the United States Court of Appeals for the Third Circuit, and successfully briefed a case to the United States Supreme Court. Ms. Poserina's career successes include representing the whistleblowers in *U.S. ex rel. Druding et al v. Care Alternatives,* a precedent setting case involving Medicare hospice care, and in *U.S. ex rel. Dunleavy v. The County of Delaware, et al.,* a case where the United States' Supreme Court ruled on the issue of who can be a proper defendant under the False Claims Act. Ms. Poserina also acted as amici curiae for The Anti-Fraud Coalition (formerly Taxpayers Against Fraud) ("TAF"), a nonprofit public interest organization dedicated to combating fraud against the Federal Government.

She is an active member of TAF, The Federal Bar Association and its Qui Tam section, the National Employment Lawyers Association ("NELA"), and NELA's Pennsylvania and New Jersey sections.

Ms. Poserina received her B.S. in Nursing from Villanova University and her J.D. from Temple University. Prior to pursuing a career in law, Ms. Poserina worked as a registered nurse in Intensive Care and Cardiac Surgical Intensive Care Units throughout the United States.

## PROFESSIONAL/COMMUNITY ACTIVITY

Member, Taxpayers Against Fraud

Member, National Employment Lawyers Association

Member, Christ Our Light Justice and Outreach Committee, Cherry Hill, NJ

## PUBLICATIONS

- **BankThink: Treasury Should Model New AML Whistleblower Rules on SEC's – American Banker**
- **How Telehealth Became a Big Target for Fraudsters, TAF Education Fund**

# EVENTS

- Regina Poserina to Moderate FBA Panel Discussion on False Claims Act Settlements
- Regina Poserina Invited to Speak at Taxpayers Against Fraud Education Fund 21st Annual Conference
- Leslie Kroeger and Regina Poserina to Speak at FJA's 2020 Qui Tam Webinar
- Regina D. Poserina Invited to Speak at NELA – NJ on Recent Developments Under the False Claims Act

© 2023 Cohen Milstein Sellers & Toll PLLC. All rights reserved.

ATTORNEY ADVERTISING. Prior results do not guarantee a similar outcome.

RELATORS' PETITION FOR ATTORNEYS'

FEES, COSTS AND EXPENSES


EXHIBIT B-1-c

**COHEN**MILSTEIN



# Casey M. Preston

OF COUNSEL
Philadelphia, PA

**t:** 267 479 5700
**f:** 267 479 5701
**cpreston@cohenmilstein.com**


**Practice Areas:**

Whistleblower / False Claims Act


**Admissions:**

Pennsylvania


**Education:**

Villanova University School of Law, J.D., 2000

The Citadel, B.S., 1995


**Clerkships & Fellowships:**

Law Clerk, the Hon. William J. Nealon, United States District Court for the Middle District of Pennsylvania, 2001-2002

Law Clerk, the Hon. Terrence R. Nealon, Court of Common Pleas, Lackawanna County, Pennsylvania, 2000-2001


**Casey M. Preston** is Of Counsel at Cohen Milstein and a member of the firm's Whistleblower/False Claims Act practice group.

Mr. Preston focuses on representing whistleblowers across the country in *qui tam* actions brought under the False Claims Act against individuals and corporations that engage in fraudulent conduct that causes significant economic harm to federal and state government programs as well as taxpayers. He has significant experience in investigating, reporting, and prosecuting Medicare and Medicaid fraud schemes and also has substantial experience with other types of government fraud, including non-compliance with government contracts, Title IV federal student aid fraud, customs and tariff fraud, and sales of defective mortgages.  He also represents individuals who report securities fraud, tax fraud, and customs fraud through federal whistleblower programs. In addition, Mr. Preston has significant experience handling complex commercial cases and securities litigation in courts across the U.S.

Some of Mr. Preston's current representations include:

- A sealed *qui tam* action against a drug manufacturer that allegedly induced physicians to prescribe its drugs by providing kickbacks in the form of free practice management and business advisory services.

- A sealed *qui tam* action against a drug company that is alleged to have violated the Anti-Kickback Statute by paying physicians to provide sham speaker programs to induce them to prescribe its drug.

- A sealed *qui tam* action alleging that a medical equipment supplier is selling unnecessary equipment and supplies to Medicare beneficiaries.

- A sealed action against a hospital system for overcharging Medicare for services furnished at its off-campus locations.

- A SEC whistleblower program case reporting that a biotech company is misleading investors about the status of a groundbreaking technology that it claims to be developing.

Mr. Preston has played a key role in a number of successful cases, including:

- ***United States ex rel. Kieff v. Wyeth:***  A *qui tam* action alleging that drug manufacturer Wyeth overcharged the state Medicaid programs by not providing them the statutorily required "best price" for a widely prescribed drug.  This action resulted in a recovery of more than $780 million by the government.

- ***United States ex rel. O'Connor v. National Spine and Pain Centers, LLC:***  A *qui tam* action alleging that pain management practices defrauded the government health care programs by (a) billing for services furnished by physician assistants and nurse practitioners as "incident to" a physician's service when the services did not qualify as such, and (b) referring patients for unnecessary drug tests. The United States intervened in and settled this action for approximately $3.3 million.

- ***United States ex rel. Davis v. Southern SNF Management, Inc.***:  A *qui tam* action against skilled nursing facilities that were involved in a multi-year scheme of increasing the facilities' Medicare collections by assigning Medicare patients to levels of therapy far greater than medically appropriate and billing Medicare at the higher amounts associated with this unnecessary therapy.  There was a $10 million recovery by the government.

- ***United States ex rel. Saidiani v. NextCare, Inc.***:  A *qui tam* action against the NextCare chain of urgent care centers that allegedly billed the government for unnecessary medical tests and services performed on beneficiaries of the government health care programs.  There was a $10 million recovery by the government.

- ***United States ex rel. Rai v. Kool Smiles, P.C.:***  A *qui tam* action against the Kool Smiles pediatric dentistry chain for allegedly billing the state Medicaid programs for unnecessary dental procedures. There was a $23.9 million recovery by the federal government and several states.

- ***[Sealed] v. [Sealed]***:  Successfully represented an investor in several commercial real estate LLCs in a fraud and breach of fiduciary duty action against the LLCs' manager.

- *In re Fleming Cos. Inc. Securities Litigation:* Represented stock and bondholders in a class action against grocery chain and food distributor Fleming Companies and its outside auditor that resulted in a $94 million recovery for investors.

- *In re Carreker Corp. Securities Litigation:* Represented stockholders in a securities class action against a software company that resulted in a $5.25 million recovery for investors.

- *Staro Asset Management v. Provell Inc.:* Represented a hedge fund in a securities fraud action against a marketing company through which the hedge fund secured a $4 million recovery.

- *In re Cigna Corp. Securities Litigation.:* Represented a state pension fund in a securities class action against health insurer Cigna that resulted in a $93 million recovery for stockholders.

In addition, Mr. Preston has provided *pro bono* services to the Legal Clinic for the Disabled and the Brady Center to Prevent Gun Violence.

Mr. Preston served as law clerk for the Hon. William J. Nealon, U.S. District Court for the Middle District of Pennsylvania and the Hon. Terrence R. Nealon, Court of Common Pleas, Lackawanna County, Pennsylvania.

Mr. Preston received his B.S. from The Citadel and his J.D. from the Villanova University School of Law.

## CURRENT CASES

- **Commonwealth of Pennsylvania v. International Business Machines Corp.**
- **Janssen Biotech FCA/Anti-Kickback Statute Violation Lawsuit**

## RECENT SUCCESSES

- **U.S.A., State of Maryland ex rel. J. Doe v. Shore Health System, Inc.**
- **USA, ex. rel. O'Connor v. National Spine and Pain Centers, LLC**
- **USA, ex. rel., Lauren Kieff, et al. v. Wyeth**

## PROFESSIONAL/COMMUNITY ACTIVITY

- Pro Bono services, Legal Clinic for the Disabled, Philadelphia
- Pro Bono services, The Brady Center to Prevent Gun Violence
- Board Member, Conestoga Youth Lacrosse

# NEWS

- "IBM Settles Pa. Labor Dept.'s Suit Over $110M IT Upgrade," Law360

- "Shore Health Pays $9.5 Million Settlement After Alleged Medicare, Medicaid Overpayments," NBC 6 KPVI

- "Maryland Health System Settles False Claims Allegations for $9.5M," Becker's Hospital Review

- University of Maryland Hospital Operator Agrees to Return $9.5M in Overpayments to Medicare and Maryland Medicaid

- "J&J Offered Doctors Free Services and Profit-Making Advice to Boost Remicade Scripts: Whistleblower Suit," Fierce Pharma

- "Virginia Pain Management Clinics Agree to Pay $3.3M to Settle Civil Fraud Claims," FierceHealthcare

- "Pain Clinic Group Pays $3.8 Million Over Medicare Fraud Claims," Bloomberg Law

- "Pain Clinics Settle Medicare Civil Fraud Claims," Richmond.com

- Virginia Pain Management Practices to Pay $3.29 Million to Settle Allegations that Fraudulent Claims for Payment Were Submitted to the U.S. Government

- Nursing Facility Operators to Pay $10 Million to Settle False Claims Act Allegations of a Scheme to Fraudulently Collect Medicare Payments

- "Nursing Orgs. Settle Medicare Reimbursement Suit For $10M," Law360

- "Companies That Defrauded the Government Fined Billions During Obama Presidency," The Wall Street Journal

- "FCA Crackdown Nets $4.7B in 2016, Capping Historic Run," Law360

- Amidst Lawsuit Against National Gun Retailers, Victim's Family Settles Case with Murderer's Mother

- "Illinois Receives Share of $784.6 Million Pharma Fraud Settlement; Governments Step Up Anti-Fraud Efforts," Cook County Record

- "Big Suits: $784.6 Million Whistleblower Settlement with Wyeth," The American Lawyer

- Pfizer Inc., Subsidiary Wyeth LLC Pay $784.6 Million to Settle False Claims Act Charges of Underpaying Protonix Rebates to U.S. and State Medicaid Programs

- Pfizer Subsidiary Wyeth Agrees in Principle to Pay $784.6 Million to Settle False Claims Act Charges of Underpaying Protonix Rebates to U.S. and State Medicaid Programs

- Cohen Milstein Files Lawsuit Against Oregon Dealer That Transferred Gun Used in Murder through Straw Purchase

- Cohen Milstein Launches Fighting Fraud For America, Whistleblower Blog

# EVENTS

- Cohen Milstein's Casey Preston Presents at the Young Lawyers Seminar of the Florida Justice Association's 2016 Annual Convention

Case 1:18-cv-12125-RGS   Document 72-5   Filed 08/25/23   Page 31 of 38

© 2022 Cohen Milstein Sellers & Toll PLLC. All rights reserved.

ATTORNEY ADVERTISING. Prior results do not guarantee a similar outcome.

RELATORS' PETITION FOR ATTORNEYS'

FEES, COSTS AND EXPENSES


EXHIBIT B-1-d

COHEN**MILSTEIN**



# Raymond M. Sarola

OF COUNSEL
Philadelphia, PA

**t:** 267 479 5700
**f:** 267 479 5701
**rsarola@cohenmilstein.com**

**Practice Areas:**
Whistleblower / False Claims Act
Ethics and Fiduciary Counseling

**Admissions:**
New York
Pennsylvania

**Education:**
University of Pennsylvania, J.D., 2005
University of North Carolina at Chapel Hill, B.A., 2002

**Raymond M. Sarola** is Of Counsel at Cohen Milstein and a member of the firm's Whistleblower/False Claims Act and the Ethics and Fiduciary Counseling practice groups.

Mr. Sarola represents whistleblowers in *qui tam* cases brought under the federal and state False Claims Act statutes in industries that conduct business with the government, including health care, defense, and financial services.  As a member of the firm's Ethics and Fiduciary Counseling practice, Mr. Sarola calls on his experience as a trustee on the New York City pension fund boards in counseling public pension funds fiduciary issues.

Prior to joining Cohen Milstein, Mr. Sarola served as Senior Policy Advisor & Counsel in the Mayor's Office of the City of New York, where he represented the Mayor and Commissioner of Finance on the boards of the City's pension systems and deferred compensation plan and advised on legal issues regarding pension investments, benefit payments, securities litigation and corporate governance initiatives.  Previously, Mr. Sarola was a litigation associate at a noted defendants' firm, where he focused on securities, antitrust, and other complex commercial litigation, and internal investigations.

Mr. Sarola's government service and corporate defense litigation experience has been invaluable to his role in counseling clients in their claims against the government and corporate entities.

Mr. Sarola has been involved in high-profile whistleblower cases including:

- *United States et al., ex rel. Lauren Kieff, v. Wyeth:*  Mr. Sarola assisted in this *qui tam* action against the pharmaceutical company Wyeth, resulting in a $784.6 million settlement, the seventh-largest False Claims Act recovery on record.

- *United States ex rel. Davis, et al. v. Southern SNF Management, Inc. et al.:*  Mr. Sarola was actively involved in this *qui tam case* in which the whistleblowers alleged the skilled nursing facilities in which they worked were involved in a multi-year scheme to increase the facilities' Medicare reimbursement by assigning Medicare patients to levels of therapy far greater than medically appropriate and billing Medicare at the higher amounts associated with this unnecessary therapy.  The government recovered $10 million from the defendants.

Some of Mr. Sarola's current representations include:

- A sealed *qui tam* action against a healthcare company alleging that it performed medically unnecessary procedures on patients covered by Medicare and Medicaid.

- A sealed *qui tam* action against healthcare companies alleging that they denied necessary treatment to patients in violation of Medicare regulations.

- Multiple *qui tam* actions alleging the unnecessary provision of skilled therapy in nursing homes.

- A sealed *qui tam* action alleging fraud in the bidding for a public contract.

- A sealed *qui tam* action against a provider of telehealth services alleging overbilling and underprovision of healthcare services.

- A sealed *qui tam* action against a healthcare company for allegedly defrauding the government's Electronic Health Record Incentive Programs.

- Sealed *qui tam* actions against pharmaceutical companies alleging that they overcharged the government healthcare programs for brand-name drugs.

- Submissions under the Securities and Exchange Commission Whistleblower Program and the Internal Revenue Service Whistleblower Program alleging securities and tax fraud against major financial services companies and other entities.

- Submissions under the SEC and Commodity Futures Trading Commission Whistleblower Programs alleging violations of the Foreign Corrupt Practices Act and the Commodity Exchange Act.

Mr. Sarola has published articles on whistleblower issues, including the use of statistical sampling to prove large fraud cases.  He has also published and spoken at conferences on pension fund fiduciary issues, in particular the SEC's pay-to-play rule.  He is a member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the False Claims Act.

In addition, Mr. Sarola was part of the Cohen Milstein team that successfully represented the estate of Kirsten Englund in a wrongful death case of first impression in Oregon state court and nationally, addressing the legal liability for federally licensed firearms dealers involved in online straw sales. The landmark settlement (October 2018) establishes important legal precedent at the state and federal levels regarding gun dealer responsibility for online sales of firearms. Given the precedential significance of this lawsuit, Cohen Milstein was named to *The National Law Journal's* "2019 Pro Bono Hot List" and won Public Justice Foundation's "2019 Trial Lawyer of the Year – Finalist" award.  Mr. Sarola was a co-author of "INSIGHT: Holding Firearms Dealers Accountable for Online Straw Sales," *Bloomberg Law* (December 19, 2018), which discussed this case and won a 2019 Burton Award for Distinguished Legal Writing.

Mr. Sarola received his B.A. from the University of North Carolina at Chapel Hill, and earned his J.D. from the University of Pennsylvania Law School, where he also earned a Certificate of Study in Business and Public Policy from the Wharton School.  While in law school, he was a Summer Intern for the Honorable Clarence Newcomer, United States District Court for the Eastern District of Pennsylvania.

## OTHER PROFESSIONAL EXPERIENCE

- Senior Policy Advisor and Counsel, Mayor's Office, City of New York, 2010-2014
- Intern, the Hon. Judge Clarence Newcomer, U.S. District Court for the Eastern District of Pennsylvania, 2003

## RECENT SUCCESSES

- **Englund v. World Pawn Exchange, LLC, et al.**

## AWARDS & RECOGNITION

- **Cohen Milstein Wins Public Justice's 2019 Trial Lawyer of the Year - Finalist Award**
- **Cohen Milstein Named to The National Law Journal's 2019 Pro Bono Hot List**
- **Cohen Milstein Receives The Burton Awards' Law360 Distinguished Legal Writing Award - Law Firm**

## PRO BONO

- **Englund v. World Pawn Exchange, LLC, et al.**

# NEWS

- "Justice Department Files Lawsuit Alleging Fresenius Charged for Unneeded Access Procedures," Healio
- United States Files Claims Alleging Fresenius Vascular Care, Inc. Defrauded Medicare and Other Healthcare Programs by Billing for Unnecessary Procedures Performed on Dialysis Patients
- "New York Files False Claims Act Case Against Fresenius in Whistleblower Suit," Healthcare Dive
- "Brooklyn U.S. Attorney Intervenes in False Claims Act Suit Against Dialysis Company," New York Law Journal
- "Feds Accuse Fresenius Unit of Fraud Over Repeat Surgeries," Law360
- "DOJ Joins Whistleblower Suit Accusing Fresenius Medical Care of Performing Thousands of Unnecessary Vascular Procedures," Fierce Healthcare
- Federal Government Joins Whistleblower Lawsuit Filed by Two Physicians Against Nationwide Dialysis Company
- Cohen Milstein Whistleblower Group Urges the IRS to Revise Its Information Referral Process to Promote Awareness and Use of Its Whistleblower Program
- Public Justice Announces Finalists for 2019 Trial Lawyer of the Year Award
- "Settlement Could Prompt Changes in Online Gun Sales, Group Says," Bloomberg Law
- Brady Center and Cohen Milstein Announce Landmark Settlement Against Internet and Retail Gun Dealers in Precedent-Setting Oregon Lawsuit
- Cohen Milstein Whistleblower Group Urges SEC to Adopt Improvements to Whistleblower Program Regulations
- Nursing Facility Operators to Pay $10 Million to Settle False Claims Act Allegations of a Scheme to Fraudulently Collect Medicare Payments
- "Nursing Orgs. Settle Medicare Reimbursement Suit For $10M," Law360
- Court Rules Murder Victim's Case Against Gun Dealers May Proceed
- Amidst Lawsuit Against National Gun Retailers, Victim's Family Settles Case with Murderer's Mother
- Cohen Milstein Files Lawsuit Against Oregon Dealer That Transferred Gun Used in Murder through Straw Purchase
- Judge Sets Trial Date In Pfizer Medicaid Fraud Lawsuit
- Cohen Milstein Launches Fighting Fraud For America, Whistleblower Blog

# PUBLICATIONS

- Cohen Milstein's Whistleblower Group Submits Comment Letter on SEC's Proposed Whistleblower Program Rules

- "Private Equity, Health Care, and Profits: It's Time to Protect Patients," STAT

- "How Telehealth Became a Big Target for Fraudsters," TAF Education Fund

- "The SEC Whistleblower Program's First Decade: $1 Billion in Awards and Counting," The National Law Journal

- "Importance of Whistleblowers in False Claims Act Lawsuits – Kaiser Permanente/MAO," The Legal Intelligencer

- "Whistleblowers Are Key to Protecting SPAC Investors," Bloomberg Law

- "Whistleblowers: About as Rare as Lightning Injuries," Taxpayers Against Fraud: Fraud By The Numbers

- NCLC's Federal Deception Law, Chpt. 9, "The Federal False Claims Act and Other Whistleblower Laws," Updated By Gary L. Azorsky and Jeanne A. Markey

- "Fraud Is Rampant in Medicare Advantage—Enforcing the False Claims Act Can Help," MedPage Today

- "Those Who Learn of Fraud Have an Important Role to Play During Pandemic," The Legal Intelligencer

- "'Cloud of Secrecy' in Medicare Advantage Plans Can Create an Environment for Fraud," STAT

- "Firearm Company Shareholders Propose Industry Principles," Shareholder Advocate Winter 2019

- Cohen Milstein's Securities Litigation & Investor Protection Practice Issues Winter 2019 Edition of the Shareholder Advocate

- "INSIGHT: Holding Firearms Dealers Accountable for Online Straw Sales," Bloomberg Law

- "Attention, Wall Street: Stopping Fraud Isn't Just Right—It Pays," Crain's New York Business

- "DOJ Approach to Skilled Nursing Facility Fraud is Affirmed," Law360

- "Everything New is Old Again: A Framework for Economically Targeted Investments and ESG Factors Under the DOL's New (Old) Guidelines," The NAPPA Report

- Is It Time for Corporate Executives to Be Held Accountable When Their Companies Defraud the Government?

- Fiduciary concerns, complexities with the SEC's pay-to-play rule

- Recent SEC 'Pay-to-Play' Enforcement Action Alert - What Public Pension Plans Need to Know

# EVENTS

- **Cohen Milstein Attorneys Jeanne A. Markey and Raymond M. Sarola present CLE Webinar "FCA Litigation: Leveraging Statistical Sampling"**

- **Cohen Milstein Attorneys Jeanne A. Markey and Raymond M. Sarola present CLE webinar, "FCA Litigation: Leveraging Statistical Sampling and Extrapolation to Prove or Disprove Liability"**

- **Cohen Milstein Attorneys Jeanne Markey and Raymond Sarola Speak at Veterans' Healthcare Advocacy Event**

- **Cohen Milstein Attorneys Jeanne A. Markey and Raymond M. Sarola present CLE webinar "FCA Litigation: Leveraging Statistical Sampling and Extrapolation to Prove or Disprove Liability"**

© 2022 Cohen Milstein Sellers & Toll PLLC. All rights reserved.

ATTORNEY ADVERTISING. Prior results do not guarantee a similar outcome.