U.S. and the COMMONWEALTH OF MASSACHUSETTS

*ex rel.* ZAPPALA, LANNA AND WOJCIK

REPLY BRIEF IN SUPPORT OF PETITION FOR
ATTORNEYS' FEES, COSTS AND EXPENSES

EXHIBIT D

# RELATORS' PETITION FOR ATTORNEYS' FEES, COSTS AND EXPENSES

## EXHIBIT B-2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE COMMONWEALTH OF MASSACHUSETTS, EX REL. STEPHEN M. ZAPPALA, M.D., OLIVIA LANNA, M.D. AND ERIC WOJCIK, <br><br> PLAINTIFFS, <br><br> VS. <br><br> STEWARD HEALTH CARE SYSTEM, LLC, ET AL., <br><br> DEFENDANTS. | ) ) ) ) ) ) ) ) **CASE NO.  18-cv-12125-RGS** ) ) ) ) ) ) |

## DECLARATION OF LISA G. ARROWOOD IN SUPPORT OF PETITION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES

I, Lisa G. Arrowood, do hereby declare as follows:

1.      I am an attorney licensed to practice law in the Commonwealth of Massachusetts since 1982. I represent relators Zappala, Lanna and Wojcik.

2.      I make this declaration to set forth information that I believe is relevant to an evaluation of the fee petition submitted on behalf of my firm, Arrowood LLP, concurrently with my co-counsel at Cohen Milstein Sellers & Toll PLLC. This information is true and correct to the best of my knowledge.

3.      Attached to the Petition as Exhibit B is a redacted copy of the complete billing and costs and expenses records of my firm since the outset of the case. Records for time, fees and costs incurred in conjunction with this fee application will be tracked, reviewed for billing judgment, and submitted to the court at a later time in these proceedings.

**Reasonableness of the Hourly Fee Requested**

4.      My 2023 standard hourly rate is $750 for both (non-FCA) fee shifting and hourly work.

5.      I have reviewed the rates of the attorneys and paralegal in my firm, as contained in our timesheets and the Petition, and they are accurate.

6.      Arrowood LLP sets its hourly guideline rates for attorneys based on empirical research into the market for general litigation attorneys in the Greater Boston area, including speaking with lawyers, clients, and potential clients about prevailing market area rates. In addition, information presented and cases cited in the fee petition indicate that hourly rates of $375 to $750 or more have been found reasonable as a matter of law for experienced litigation and FCA attorneys as far back as 2020.

7.   I have approximately 40 years of legal experience. I have a bachelor's degree from Brown University, where I graduated *magna cum laude*, and was a member of Phi Beta Kappa. I am a 1982 *cum laude* graduate of Harvard Law School. After graduation, I was an associate, and later a partner at Hale and Dorr.  I was a founding partner at Todd & Weld LLP. I formed Arrowood LLP in 2011, and I have practiced here since.

8.   I have litigated cases in state and federal courts in Massachusetts, New Hampshire, Vermont, New Jersey, Texas, Virginia, Rhode Island, Nevada, and Connecticut.

9.      My practice has been quite diverse, including work in commercial litigation, business litigation, medical malpractice, personal injury claims, plaintiff and defendant employment litigation, attorney malpractice and attorney discipline matters, and related matters.

10.      I was selected for inclusion in *The Best Lawyers in America* for every year from 2001 to present, for my work in the practice areas of Commercial Litigation, Litigation- Labor and Employment, Medical Malpractice Law-Plaintiffs, and Personal Injury Litigation- Plaintiffs. I have been recognized as one of the *Top Ten Massachusetts Super Lawyers* since 2013, and was ranked number 1 from 2017 to 2021, and

in 2014. I have been a Fellow of the American College of Trial Lawyers since 2000.

11.     As co-lead counsel for the Relators, from the matter's inception until July 31, 2023, I performed 262.10 hours of legal work on this matter.

12.     I am familiar with all Arrowood attorneys who have performed work on this matter. The time reported below covers the matter's inception until July 31, 2023.  A true record of the time spent on this matter is attached to the Petition as Exhibit 2. Further information on each attorney may be accessed on our firm's website, https://arrowoodllp.com/attorneys/.

    a.  Raymond P. Ausrotas is a partner in the firm, and has been nationally recognized by *Best Lawyers,* in the areas of Commercial Litigation and Litigation-Regulatory since 2017.  In 2019, Mr. Ausrotas, along with Edward Foye, won a $16 million verdict, increased to a $25 million judgment with mandatory interest, on behalf of direct and derivative shareholders, one of the Top 10 Massachusetts jury awards in 2019.  Mr. Ausrotas' hourly rate is $595 and is a rate used in both (non-FCA) fee-shifting and hourly cases. Mr. Ausrotas performed 0.40 hours of legal work on this matter.

    b.  Jed DeWick is a partner in and co-founder of the firm, and a 1999 graduate of Brown University and 2002 graduate of Boston College Law School.  Mr. DeWick litigates complex and high stakes civil matters, including breach of fiduciary duty, misappropriation of confidential information, unfair and deceptive trade practices matters, and wrongful termination matters. Mr. DeWick is a Fellow of The Litigation Counsel of America, a trial lawyer honorary society, and he has been recognized by Massachusetts *Super Lawyers* each year since 2006. Mr. DeWick's hourly rate is $500, and is a rate used in both (non-FCA) fee-shifting and hourly cases. Mr. DeWick performed 0.80 hours of legal work on this matter.

    c.  Edward Foye is Of Counsel, and a 1978 graduate of Columbia College of Columbia

University, and a 1992 *cum laude* graduate of Boston University Law School. Mr. Foye litigates a variety of cases, including class actions, attorney liability and malpractice, consumer fraud, contract disputes, defamation, and insurance disputes. Mr. Foye has considerable experience in federal and state appellate courts, and his cases have resulted in numerous published opinions, having written or co-written over 80 appeals briefs. Mr. Foye's hourly rate is $475 and is a rate used in both (non-FCA) fee shifting and hourly cases. Mr. Foye performed 48.20 hours of legal work on this matter.

d.  William F. McGonigle is a partner, and a 2003 graduate of Georgetown University's Walsh School of Foreign Service and a 2011 graduate of The George Washington University Law School. Mr. McGonigle focuses his practice on commercial litigation and trial strategy. Mr. McGonigle represents insurance companies, investment firms, banks, consumer product corporations, nonprofits, and a variety of individuals in matters involving breach of contract, environmental issues, fiduciary duties, medical malpractice, and fraud. Mr. McGonigle's hourly rate is $395, and is a rate used in both (non-FCA) fee shifting and hourly cases. Mr. McGonigle performed 14.50 hours of legal work on this matter.

e.  Sarah E. A. Sousa is an associate, a 2011 graduate of Hobart and William Smith Colleges, and a 2014 graduate of Boston College Law School. Ms. Sousa's practice focuses on employment and business law and civil litigation. Ms. Sousa was honored as a 2020 "Up & Coming Lawyer for Excellence in the Law" by Massachusetts Lawyers Weekly. She was also named a Massachusetts *Super Lawyers* "Rising Star" for employment law from 2019 to the present. Ms. Sousa's hourly rate is $375, and is a rate used in both (non-FCA) fee shifting and hourly cases. Ms. Sousa performed 457.60 hours of legal work on this matter.

f.  Denise Bond is a paralegal with 17 years' experience. Ms. Bond's hourly rate is $150.  Ms.

4

Bond performed 4.10 hours of paralegal work on this matter.

13.     I have reviewed the work and timesheets of these lawyers and the paralegal, and, based on the foregoing, I believe that the hourly rates charged in connection with this lawsuit were and are reasonable, and are well within the range of what attorneys with comparable experience, background, and skill charge in the Boston market for their services.

14.     Any additional time incurred in conjunction with this fee petition will be tracked, reviewed for billing judgment, and submitted to the court at a later time in this proceedings.

**Summary of the Charges Requested**

15.     The document attached as Exhibit 2 is a true and accurate copy of the billing records maintained by Arrowood LLP on this case. They have been lightly edited for clarity, to correct typographical errors, and to redact attorney-client communications. When an entry reflects time for which reimbursement is not claimed, the entry is redacted in its entirety.

16.     What follows is a chronological summary of the work performed on this case that relates to the filing of the Complaint, service of the Disclosure Statement, discussions and assistance provided to the governments of the United States and Massachusetts, settlement of the matter, and work on the attorneys' fees, costs and expenses negotiations.

17.     Arrowood performed substantial and necessary pre-filing investigation of all potential FCA claims that could be asserted, in order to maximize the government and Relators' recovery. Arrowood met with all clients, drafted memoranda regarding potential legal violations, contacted Gary L. Azorsky to seek his assistance in the case, met with the client and attorneys regarding the potential claims, received and reviewed each Relator's documents, drafted outlines for the complaint and disclosure statement, researched the defendants' relationships, communicated with co-counsel, and filed and served the complaint and disclosure.  Arrowood's work before the complaint was filed encompassed 80.4 hours.

18.     Arrowood performed substantial and necessary work while the case was under seal, beginning on or about October 11, 2018, until on or about November 5, 2021. Arrowood attorneys communicated with co-counsel, clients and the government regarding the newly filed matter, prepared clients for U.S. Attorney interviews, attended U.S. Attorney interviews with the clients, reviewed information sent and questions asked by the government on multiple occasions, reviewed and produced additional documents to the government, reviewed and prepared supplemental productions to the government, drafted and produced several documents and letters at the government's request, communicated regularly with the clients and co-counsel, reviewed deposition transcripts from Dr. Zappala's state court action for production to the government, managed issues related to a partial lift of the court's seal for purposes of the state court matter, and developed and reviewed research related to the private equity defendant, ACOs, and piercing of the corporate veil.  Arrowood's work in this stage of the litigation encompassed approximately 672.20 hours.

19.     Arrowood performed substantial and necessary work from the announcement of a potential settlement until the settlement agreement was signed, and work related to fee negotiations and the Petition for Attorneys' Fees, Costs and Expenses, from on or about November 5, 2021, to present. Arrowood's attorneys communicated with co-counsel and the government, drafted and edited the settlement agreement, reviewed and redacted timesheets, drafted and edited fee letters to Defendants' counsel, and participated in mediation. Arrowood's work in this stage of the litigation encompassed approximately 35.1 hours. Arrowood also has drafted and edited documents related to the Petition for Attorneys' Fees, Costs and Expenses. Any additional time associated with that work will be reviewed for billing judgment, and submitted at a later time.

20.     I have reviewed the time submitted by all Arrowood attorneys and our paralegal, and find that it truthfully and accurately reflects the work performed by each attorney and paralegal in this matter.

21.     I have reviewed the work and timesheets of these lawyers and the paralegal, and, based on the foregoing, I believe that the hours clamed in connection with this lawsuit were and are reasonable and necessary for the type of representation and the work required in this lawsuit.  The Arrowood attorneys' work product was of exceptional quality, and fully compensable.

**Costs Incurred**

22.     The costs Arrowood incurred in representing the Relators were reasonable for a *qui tam*  case of this complexity and duration, and the underlying factual and legal issues.

23.     Arrowood incurred costs for the complaint filing and mailing, in the amount of $493. A true record of the costs is attached to the Petition as Exhibit 2.

24.     Any additional fees and costs incurred in conjunction with this fee application will be tracked, reviewed for billing judgment, and submitted to the court at a later time in these proceedings.

**CONCLUSION**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2023

_____

Lisa G. Arrowood

RELATORS' PETITION FOR ATTORNEYS' FEES,
COSTS AND EXPENSES

EXHIBIT B-2

ATTACHMENT 1



([https://arrowoodllp.com/](https://arrowoodllp.com/))

**MENU**

Email

vCard

Downloadable

**Phone**
**(617) 849-6210 (tel:**
**(617) 849-6210)**

**ARROWOOD LLP**
**10 Post Office**
**Square**
**7th Floor South**
**Boston, MA 02109**

## Education

J.D., Harvard Law
School, *cum laude*

B.A., Brown University,
*magna cum laude*, Phi
Beta Kappa

## Bar Memberships

**Massachusetts**

**United States District**
**Court, Massachusetts**



Lisa G. Arrow
Partner

| Overview | – |

# Career Overview

Lisa G. Arrowood, founding partner of Arrowood LLP, has more than thirty years' experience practicing law in the areas of **business litigation, employment disputes, medical malpractice, personal injury and legal malpractice**. Prior to Arrowood LLP, she was a founding partner of Todd & Weld LLP and a partner and associate at Hale and Dorr.

Well known for her expert ability to try to a jury, judge or

**United States Court of Appeals, 1st Circuit**

**United States Court of Appeals, 4th Circuit**

**Admissions *pro hac vice* in various courts**

## Professional Activities and Organizations

**Member, American Bar Association, 1985-present**

> **Co-Chair, 2021 Women in Litigation Joint CLE Conference**

> **Member, Practitioner's Reading Group, Evaluation of U.S. Supreme Court nominee, Amy Coney Barrett, 2020**

> **Member, House of Delegates, 2016-present**

> **Member, Standing Committee on the Federal Judiciary, 2010-2013**

> **Vice-Chair, Medicine and Law Subcommittee of Tort and**

arbitrator, Lisa has litigated cases in state and federal courts in Massachusetts, New Hampshire, Vermont, New Jersey, Texas, Virginia, Rhode Island, Nevada, and Connecticut.

Her extensive jury trial experience resulted in her induction into fellowship in the American College of Trial Lawyers in 2000 and the International Academy of Trial Lawyers in 2014. She has been described in *Chambers USA, America's Leading Lawyers for Business* as a "dynamic courtroom attorney" and "a force of nature" with "tremendous talent" in cross-examination.

Experienced in all types of **business litigation**, Lisa has handled breach of contract and misrepresentation disputes; disputes concerning non-competition agreements and other restrictive covenants; breach of fiduciary duty cases; and unfair business practices cases. She has successfully tried to resolution numerous business dispute cases, and has represented both publicly traded corporations and family businesses. Her experience includes disputes within the financial services industry, including venture capital and private equity.

Widely known for her accomplishments in **medical malpractice cases**, Lisa has represented plaintiffs in virtually every type of medical malpractice action, ranging from birth injury to failure to diagnose cancer, heart attacks, and stroke. In 1998, she won the third largest jury verdict in the Commonwealth of Massachusetts for a medical malpractice case.

Lisa's successes in **personal injury claims** are well documented in Massachusetts as well as in local and federal courts across the United States. She has achieved settlem in the millions of dollars, representing plaintiffs in suits

Insurance Practice Section, 1987-1994

Member, Supreme Judicial Court Nominating Commission, 2016

American College of Trial Lawyers

Fellow, 2000-present

Chair, Gates Award Committee, 2015-2017

Member, Gates Award Committee, 2013-2017

Member, Journal Committee, 2013-present

Member, Regents Nominating Committee, 2011

Chair, State Committee 2009-2011

Vice-Chair, State Committee 2007-2009

Member, State Committee, 2005-2013

Massachusetts Board of Bar Overseers, 2009-2015

involving injuries suffered in construction accidents, automobile accidents, industrial accidents, and products liability claims.

Experienced in **employment litigation**, Lisa has successfully represented employers across all major industries in cases involving sexual harassment, gender and race discrimination, handicap discrimination and other claims. She has obtained settlements for employees in the high six and seven figures and skillfully negotiated complex severance packages and employment agreements on behalf of financial, marketing and sales executives as well as physicians.

Lisa's extensive expertise also encompasses **legal malpractice** matters. She has represented individuals and corporations in legal malpractice claims against their lawyers and law firms. Additionally, she has represented attorneys against whom malpractice claims have been made. Lisa has worked on matters involving mistakes made by corporate lawyers, employment lawyers, estate planning lawyers and other specialties. Although she has successfully tried cases to verdict, she usually achieves pre-trial settlements in legal malpractice matters.

Throughout her career, she has represented a diverse list of prominent clients including Dr. Barry Sears, creator of the ZONE Diet, Staples, Inc., Fidelity Investments, Gillette, Procter & Gamble, the *New York Times*, Meredith Corporation (publisher of *Better Homes and Gardens* magazine), Ropes & Gray, as well as several other law firms, and many other individuals and businesses of all types and sizes.

An active member of the Boston Bar Association for many years, Lisa served as BBA president from 2015-2016. She was

Privacy - Terms

**Member, Boston Bar Association**

> **President, 2015-2016**
>
> **Vice President, 2013-2014**
>
> **Secretary, 2012-2013**
>
> **Co-Chair, Tort Litigation Committee, 2007-2009**
>
> **Member, BBA Council, 2009-2016**
>
> **Member, BBA Executive Committee, 2010-2016**
>
> **Member, Strategic Communications Committee**

**Massachusetts Continuing Legal Education**

> **Member, Litigation Curriculum Advisory Committee, 1997-2008**

**Fellow, International Academy of Trial Lawyers, 2014-present**

**Massachusetts Academy of Trial Attorneys**

years. Lisa served as its President from 2015-2016. She was also a member of BBA's Executive Committee from 2010-2016 and the BBA Council from 2009-2016. She has also held leadership positions in the American College of Trial Lawyers and was a member of the Massachusetts Board of Bar Overseers from 2009-2015.

Lisa held a three year appointment (2010-2013) as the First Circuit Representative to the ABA Standing Committee on the Federal Judiciary. The 15-member Committee evaluates all nominations of Article III judges to the federal district courts, circuit courts of appeals and the United States Supreme Court, as well as various territorial district courts.

# Notable Cases

- Together with Sarah E. A. Sousa (https://arrowoodllp.com/sarah-e-a-sousa/), represented whistleblowers who filed a False Claims Act complaint on behalf of the United States and the Commonwealth of Massachusetts against Steward Health Care System, resulting in a $4.7 million settlement related to Medicare and Medicaid kickback allegations.

- With Arrowood LLP partner Jed DeWick, obtained a preliminary injunction on behalf of an international financial services company prohibiting a former high-level employee from competing with the company or soliciting its customers (May 2011).

- With partner Jed DeWick, represented a former private equity partner in claims against his former firm, winning the case after a week-long arbitration (August 2016).

- Won the third largest jury verdict with a $10.5 million judgment in the Commonwealth of Massachusetts, for a

**Member, Massachusetts Bar Association**

Member, Health Law Council, 2001-2004



([https://www.bestlawyers.com/lawyers/lisa-g-arrowood/33551](https://www.bestlawyers.com/lawyers/lisa-g-arrowood/33551))



([http://www.actl.com/](http://www.actl.com/))



([http://www.iatl.net/](http://www.iatl.net/))

family in a medical malpractice case involving a neurological injury, known as kernicterus, to a newborn (1998).

- Obtained settlements for plaintiffs in kernicterus cases in the millions of dollars in cases filed all over the country.

- With partner Jed DeWick, obtained a multimillion dollar judgment against an obstetrician in a case involving the death of a pregnant mother from cardiomyopathy of pregnancy (2009).

- Won a multimillion dollar verdict against an internist involving the death of a 21 year old college basketball player suffering from hypertrophic cardiomyopathy, known as HCM (2010).

- With Arrowood LLP partner, Raymond Ausrotas, won the 10th largest jury verdict in the Commonwealth of Massachusetts, on behalf of a severely injured autistic boy. The case was brought against his school's medical director and various administrators who had failed to supervise the child's caretakers, and against several teachers who had physically and emotionally abused him. The $2 million judgment was delivered following a six week jury trial (2006).

- With partner Jed DeWick, obtained a defense verdict for her financial industry client in a disability discrimination case after a three week jury trial in Suffolk Superior Court.

- Won a gender discrimination case against Dana Farber Cancer Institute after a three week jury trial (2011).

- Successfully defended Dr. Barry Sears, creator of the Z Diet, when he was sued for breach of contract in the United States District Court for the District of



([http://www.lawdragon.com/the-2014-15-lawdragon-500-leading-lawyers/](http://www.lawdragon.com/the-2014-15-lawdragon-500-leading-lawyers/))

([http://www.americanbarfoundation.org/fellows/index.html](http://www.americanbarfoundation.org/fellows/index.html))

([http://profiles.superlawyers.com/massachusetts/boston/lawyer/lisa-g-arrowood/32928a79-2e6d-49c7-bcce-5229ee1c019d.html](http://profiles.superlawyers.com/massachusetts/boston/lawyer/lisa-g-arrowood/32928a79-2e6d-49c7-bcce-5229ee1c019d.html))

Massachusetts. The case was voted among the "Biggest Defense Wins of the Year" by *Massachusetts Lawyers Weekly* in 2003.

Lisa has also handled various novel cases and cases of first impression both at the trial court level and on appeal including:

- *Pettengill v. Morrison, Mahoney & Miller* (426 Mass. 253 [1997])

- *Darius v. City of Boston*, (433 Mass. 274 [2001])

- *Gladu v. Boston IVF*, (Mass., Middlesex County Super. Ct., No. 98-4189, Jan. 30, 2004)

- *First Enterprises, Ltd. v. Cooper*, (425 Mass. 344 [1997])

- *Driscoll v. Milton Academy*, (70 Mass. App. Ct. 285 [2007])

# Honors and Awards

- Named one of "The *Best Lawyers* in America" for Commercial Litigation, Medical Malpractice Law and Personal Injury Litigation, Best Lawyers, 2002-present

- Named as a "New England Best Lawyer" for Commercial Litigation, Labor and Employment Law, Medical Malpractice Law and Personal Injury Law, 2018

- Inducted into the Circle of Excellence by *Massachusetts Lawyers Weekly's* Top Women of Law, September 2018

- Selected as one of "The 500 Leading Plaintiff Consumer Lawyers," *Lawdragon*, 2019-present

- Selected as a "Most Powerful Employment Lawyer," *Lawdragon*, 2016-present

- Selected as one of "The 500 Leading Lawyers in Amer...

*Lawdragon*, 2015-present



(http://profiles.superlawyers.com/massachusetts/boston/lawyer/lisa-g-arrowood/32928a79-2e6d-49c7-bcce-5229ee1c019d.html)

(http://profiles.superlawyers.com/massachusetts/boston/lawyer/lisa-g-arrowood/32928a79-2e6d-49c7-bcce-5229ee1c019d.html)

- Recognized as one of the "Top Ten Massachusetts Super Lawyers," 2013-present. Number 1 point earner in 2021, 2020, 2019, 2018, 2017 and 2014; number 2 point earner in 2013 and 2015; and number 3 in 2016.

- Named to Super Lawyers "Massachusetts Top 100," 2004-present; "Massachusetts Top 50 Women," 2004-2005 and 2007-present; "New England Top 100," 2009-2019; and "New England Top 50 Women," 2007-2019.

- Named a "Top Attorney in Business Litigation," Corporate Counsel Edition, *Super Lawyers* magazine, 2008-present.

- "Recommended in Litigation," America's Leading Lawyers in Business, *Chambers USA*, 2006-present.

## Publications and Lectures

- Panelist, "Judicial Involvement Promoting Diversity in Legal Leadership: Perspectives from the Bench, the Bar and Academia," 2021 Women in Litigation Joint CLE Conference, Boston, November 2021

- Lecturer, Medical Malpractice, Brown University, March 20, 2019

- Panelist, "Does Gender Matter in the Courtroom?", Women's Leadership & Advancement Forum, Boston Bar Association, February 11, 2019. Interview with Lara Bazelon, author of "What it Takes to Be a Trial Lawyer if You are Not a Man."

- CLE Teacher, Trial Skills Workshop, Suffolk University Law School, May 2018

- Lecturer, Medical Malpractice, Brown University, April 2018

500 LEADING PLAINTIFF CONSUMER LAWYERS

LAWDRAGON 2022

(https://www.lawdragon.com/guides/2022-04-19-the-2022-lawdragon-500-leading-plaintiff-consumer-lawyers)

500 LEADING LAWYERS

LAWDRAGON 2021

(https://www.lawdragon.com/2021/01/27/the-2021-lawdragon-500-leading-lawyers-in-america/)

MOST POWERFUL EMPLOYMENT LAWYERS

LAWDRAGON 2018

()

- Speaker, "GRIT: The Secret of Advancement," Women's Leadership and Advancement Forum, Boston Bar Association, December 2017

- Speaker, BBA Women's Leadership & Advancement Forum Launch Event, Boston College Club, November 2017

- Speaker, "15 Leadership Insights from Women Who Know," Ms. J.D. NWLSO Leadership Academy, Harvard Law School, September 2017

- Panelist, "Women Lawyers Leading Cases in the Courtroom," John J. Moakley Federal Courthouse, June 2017

- Speaker, "Life in the Trenches: a Talk With a Real-life Tort Lawyer," Harvard Law School, October 2016

- Speaker, "From Surviving to Thriving: Practice Readiness for New Lawyers," Mid-Year Meeting of the National Conference of Bar Presidents, February 2016

- MCLE Panelist, "A Conversation with the Legends: Masters of Direct and Cross-Examination," October 2015

- Panelist, "Pathways to the Bench," New Hampshire Bar Association, June 2015

- Panelist, "Tired of Playing Second Fiddle in Court? How to Move Up to First Chair," Women's Bar Association, January 2015

- Panelist, "Effective Personal & Client Advocacy: Negotiating Strategies for Women," Suffolk Law School, March 2013

- Panelist, ABA Section of Dispute Resolution's 10th Annual Program on Advanced Mediation and Advocacy Skills, November 2012



()

- Panelist, "It's (Past) Time To Update That Contingent Fee Agreement: Navigating the 'New' Rule 1.5", Brown Bag Lunch Program, Boston Bar Association, March 2011

- Faculty Member, MCLE's "Winning Your Case Before Trial," January 2011

- Panelist, "Trial Success Stories," Massachusetts Academy of Trial Attorneys (MATA), November 2010

- Trial Adviser, Harvard Law School Trial Advocacy Workshop, January 2010

- CLE Panelist, "Is The Civil Justice System in Serious Need of Repair?", joint project of the American College of Trial Lawyers Task Force on Discovery and The Institute for the Advancement of the American Legal System, Boston Bar Association, December 2009

- CLE Panelist, "Superior Court Practice," Boston Bar Association, March, 2009

- Faculty Member, Center for Legal Aid Education and American College of Trial Lawyers four-day trial skills training program, June 2008

- CLE Panelist, "Ethical Challenges in Bringing Cases to Trial," Boston Bar Association, 2008

- MCLE Faculty Member, Personal Injury Law Conference, 2008

- Annual Lecturer, Medical Malpractice, Brown University

- Periodic Panelist on Medical Malpractice, Business Litigation, Trial Practice and Discovery Matters

## News & Results                                                    +

Home (https://arrowoodllp.com/)

About Firm (https://arrowoodllp.com/about-firm/)

Our Team (https://arrowoodllp.com/attorneys/)

Practice Areas (https://arrowoodllp.com/practice-areas/)

News (https://arrowoodllp.com/news/)

Contact Us (https://arrowoodllp.com/contact-us/)

Copyright © 2022 Arrowood LLP

RELATORS' PETITION FOR ATTORNEYS'

FEES, COSTS AND EXPENSES


EXHIBIT B-3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA and the COMMONWEALTH OF MASSACHUSETTS *ex rel.* ZAPPALA, LANNA AND WOJCIK, | ) ) ) ) |
| Plaintiffs, | ) **CASE No. 18-CV-12125-RGS** ) |
| v. | ) ) |
| STEWARD HEALTHCARE, LLC, ET AL. | ) ) |
| Defendants. | ) ) |

**DECLARATION OF JEANNE A. MARKEY IN SUPPORT
OF RELATORS' PETITION FOR
ATTORNEYS' FEES, COSTS AND EXPENSES**

I, Jeanne A. Markey, declare and state as follows:

1.      I submit this declaration in support of the Motion of Relators Zappala, Lanna and Wojcik for an Award of Attorneys' Fees, Costs, and Expenses pursuant to the False Claims Act, 31 U.S.C. § 3730(d)(1) and (2). I served as co-lead counsel for the Relators in this case. This declaration is based on my own personal knowledge, and all opinions expressed herein are genuinely held, based on my knowledge and experience. If called as a witness to this action, I could and would testify competently to the following.

**PROFESSIONAL QUALIFICATIONS**

2.      I am an attorney licensed to practice law in the Commonwealth of Pennsylvania since 1983. Since approximately 1999, I have represented relators in False Claims Act *qui tam* cases as well as whistleblowers under other statutes. Since 2012, I have done so as a partner at Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein" or "the Firm"), Philadelphia, PA, with

experienced whistleblower lawyers Gary L. Azorsky, Regina D. Poserina, Casey M. Preston, and Raymond M. Sarola. Until June 1, 2023, I was the co-managing partner of the Whistleblower Practice at Cohen Milstein. In June of this year I became Of Counsel to the Firm. During my time at Cohen Milstein, I have supervised the other attorneys in the practice group.

3.      In addition to being a member of the bar in Pennsylvania, I am admitted to practice in the United States Court of Appeals for the First Circuit, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the Eastern District of Michigan and the United States District Court for the District of New Jersey. During my forty years of law practice, I have litigated civil matters in state and federal trial and appellate courts.

4.      I graduated with a Bachelor of Arts in English, cum laude, from Colgate University in 1979 and received my law degree from Cornell University Law School in 1983. Upon graduation, I engaged in commercial litigation as an associate at Sills Beck Cummis Radin & Tischman in Newark, New Jersey. In 1984, I took a position as an associate with the law firm Berger & Montague, P.C. in Philadelphia where I became a shareholder in 1992. I was primarily engaged in the practice of complex class action securities fraud litigation until approximately 1999 when I began to focus on representing relators in FCA litigation (especially the Ven-a-Care cases mentioned below). In the early 2000's I also devoted significant time to litigating a class action involving the ambient air quality in Lower Manhattan in the wake of 9/11.

5.      I joined Cohen Milstein Sellers & Toll PLLC as a partner in 2012 and started the firm's Whistleblower Practice with Gary L. Azorsky and Casey M. Preston.

6.      In my capacity as relator's counsel, I have represented whistleblowers in cases resulting in False Claims Act settlement recoveries to the U.S. and states well in excess of $1 billion. I represented the *Ven-A-Care* whistleblowers in federal and state health care FCA cases against

multiple pharmaceutical companies, a whistleblower who brought Medicaid "best price" fraud allegations against Wyeth Pharmaceuticals in the District of Massachusetts (*U.S., et al., ex rel. Kieff v. Wyeth Pharmaceuticals, Inc.,* Civ. No. 03-cv-12366, (D. Mass.) (DPW)), and cases involving defense contractors, pharmaceutical companies, skilled nursing facilities, pain management clinics, and vascular treatment facilities, among others. I have represented whistleblowers in many different judicial districts including in Massachusetts, New York, New Jersey, Florida, Pennsylvania, Washington, D.C., Michigan, Iowa, Oklahoma, Virginia and California.

7.      I have also represented whistleblowers under the whistleblower programs of the Securities and Exchange Commission, the Commodity Futures Trading Commission, and the National Highway Traffic and Safety Administration.

8.      I was recognized for my work when I was named one of the top 26 women lawyers in Pennsylvania in 2016 by *The Legal Intelligencer*, a news publication serving the Philadelphia legal community. I have been recognized by LawDragon as a top plaintiffs financial attorney every year from 2020 through 2023. I provided expert guidance on the False Claims Act at a hearing before the House Judiciary Committee and House Oversight Committee on Governmental Reform relating to the confirmation of a cabinet nominee who had overseen False Claims Act cases as a senior attorney at the Department of Justice. I am a member of The Anti-Fraud Coalition (formerly Taxpayers Against Fraud Education Fund).

9.      I have authored and co-authored numerous newspaper and magazine articles about the False Claims Act, concerning topics such as the use of statistical sampling, fraudulent upcoding by Medicare Advantage Organizations, pursuing FCA claims against individuals in corporate leadership positions, and private equity's growing role in healthcare. In 2021, I co-authored and

updated, with Gary L. Azorsky and Raymond M. Sarola, the False Claims Act chapter in the National Consumer Law Center's book, Federal Deception Law, titled *The Federal False Claims Act and Other Whistleblower Laws."* Through the years, I have been a speaker for several continuing legal education courses on FCA-related subjects.

10.     A more extensive description of my professional credentials and experience can be found as Attachment 1 to this Declaration and is available on our firm's website at

https://www.cohenmilstein.com/professional/jeanne-markey.

### My Experiences And Familiarity With Representing Whistleblowers

11.     Based on over twenty years representing whistleblowers and *qui tam* relators, and my interactions with *qui tam* and other whistleblower attorneys, I have gained substantial familiarity with the *qui tam* and whistleblower legal services marketplace. I am familiar with the challenges inherent in *qui tam* litigation, as well as the specialized skills, knowledge and experience necessary to successfully prosecute such actions, the amount of time, expenses and delays reasonably expected to be incurred in the various stages of the litigation, the hourly rates billed by attorneys on both sides, and the substantial economic risks which relators' attorneys must take on in these cases.

12.     FCA cases require constant caselaw review in all district court and appellate jurisdictions and the U.S. Supreme Court to keep up with litigation trends and changes in the interpretation of the FCA legal framework. Likewise, the laws, regulations and sub-regulatory guidance which govern the activities of business entities that provide goods and services to the government (to CMS or DOD, for example) are extensive and detailed. They contribute to an environment in which bad actors can commit fraud in a multitude of difficult to detect ways.

13.     My experiences representing relators inform my perspective on the unique legal

challenges faced by *qui tam* counsel. My experiences representing relators in the FCA *qui tam* cases *U.S. ex rel. Ven-A-Care of the Florida Keys Inc., v. Dey Laboratories*, *U.S. et al., ex. rel. Kieff, v. Wyeth Pharmaceuticals Inc.*, and most recently *United States ex rel. Pepe* and *Sherman v. Fresenius Medical Holdings, Inc., et al.*, No. 14-cv-3505 (E.D.N.Y.) (LDH), have been very instructive, for instance.

14.     In *Ven-a-Care*, our legal team included firms with *qui tam* expertise as well as firms with general civil litigation and complex litigation skills. There were multiple defense counsel, including large seasoned litigation firms such as Kelley Drye & Warren, Jones Day, Kirkland & Ellis and Winston & Strawn. Also in the *Ven-A-Care* cases, once the cases were unsealed, the extensive litigation required a demanding schedule, and close coordination and cooperation with the federal and state governments. The Relators and their legal team amended the complaints (my primary responsibility while working on these cases as best I recall), litigated multiple motions on legal and discovery issues, took and defended multiple depositions, prepared and addressed multiple expert reports and depositions, reviewed a large volume of documents, and opposed motions to strike our experts. Given the Defendants' resources and aggressive defenses, Relator's attorneys were forced to commit substantial time and resources to the litigation, despite no guarantee of recovering attorneys' fees and costs.

15.     Representing *qui tam* plaintiffs is rather unique. As contingent litigation it necessarily involves significant risk while at the same time the whistleblower attorney's control over the course of the case is limited by the essential role which the Government plays in investigating, litigating and settling the case.

16.     *Qui tam* litigation for relator's counsel is also risky because government FCA investigations often last up to or even beyond five years, a period during which relators'

attorneys are not being paid for their time or expenses. And *qui tam* work does not end with the filing of the complaint. To best serve your client and the Government, it requires significant, ongoing effort working on a case after it is filed under seal, thus precluding work on other matters. The Government's attorney and investigator resources are not unlimited (as they often seem to be in the case of defense counsel) even though they are routinely pursuing frauds that are complicated and far reaching. It is a practical necessity that to pursue the best result possible for relators and for the Government, relators and their counsel commonly devote significant time providing assistance to the Government in its pursuit and resolution of an FCA case. Relators' attorneys must possess the skills and experience necessary to engage with the Government, earn its trust and confidence and help inform the Government's intervention decision.

17.    Government attorneys who have confidence in relator and relator's counsel enlist their assistance in reviewing documents and researching legal issues. They also ask for assistance in drafting document requests. And they take on other tasks as well. Looking only at cases while they remained under seal and in the investigatory phase, in the course of almost 25 years litigating *qui tam* cases, the Government has requested that I reach out to potential witnesses, assist in damage analyses, assist in preparing presentations to be used when laying out a case to defense counsel, and identify and work with experts. Serving as the conduit between the whistleblower and the government is critical as well; the government typically asks questions of the relator on an ongoing basis after the initial relator interview. When the Government asks for litigation assistance, the Government fully expects that the relator and his or her counsel will answer the call and help. Experience has also taught me that the relator best serves the whistleblower and government when they keep the government apprised of any relevant new legal decisions, any pertinent information in the news media, or any new legal theories which the

government has not yet considered. One should not hesitate to provide memos, spreadsheets, outlines, interview questions or any written product which will make the Government's job easier. False Claims Act practitioners well know that the chances of recovering funds under the FCA are usually highest when the Government intervenes. Diligent, time-consuming case preparation and development before filing a complaint, and relator assistance during the investigation, increase the likelihood of intervention. Since the United States intervenes in only approximately 20% of *qui tam* cases, relator's counsel routinely risk spending long hours on matters that may ultimately prove to be unsuccessful.

18.     I am familiar with the CVs, skills, experience, and reputations of Gary L. Azorsky, Regina D. Poserina, Casey M. Preston, and Raymond M. Sarola. Their CVs accurately reflect each attorney's experience, education, and background. Each of these attorneys has an expansive understanding of FCA opinions, issues and complexities. They diligently advance their clients' cases.

19.     As part of this litigation, I supervised the work of Mr. Preston and Mr. Sarola, paralegals Cris Fiore and George Doehne, and legal intern Gwyneth Harrick. I personally reviewed the work they performed. I know them to be honest, extremely capable individuals and believe their time entries to be honest and accurate.

20.     For legal counsel representing whistleblowers, the statutory fee provisions of the FCA set forth in 31 U.S.C. § 3730(d) are an important factor in the decision to proceed as counsel because even though defense counsel often attack the legitimacy or accuracy of counsel's time entries at the conclusion of a case, and relator's counsel may accept a compromise amount to bring closure to the case, nevertheless, the prospect of receiving some amount of statutory fees, and reimbursement for expenses, necessarily offsets what might otherwise be a risk not worth

taking. The fee model for *qui tam* litigation differs from that of class action litigations such as the securities class action cases I litigated on behalf of investors years ago. In those cases, the percentage of the class recovery which the court awarded to class counsel in fees ranged from roughly 20-33% of the total recovery. But relator's counsel only receives a percentage of the relator's award, not of the total recovery. I am not aware of any case in which relator's counsel has ever been awarded anything nearly approaching the percentage amounts which courts commonly award counsel in Rule 23 class actions. In particular this is true with respect to Cohen Milstein.

21.     Given the standards accepted by this court, I believe the Cohen Milstein rates set for me (forty years' experience, $1,075 rate), Cris Fiore (paralegal until 2020, $290 rate), Gwyneth Harrick (2020 legal intern, $310 rate) and Mr. Doehne (paralegal, $350 rate), are within acceptable ranges.

22.     I am familiar with the work, knowledge, skills, experience and excellent reputation of Suzanne Durrell. I have attended seminars at which she has presented on various aspects of FCA law and the successful FCA cases in which she has taken a lead role. Ms. Durrell has an expansive understanding of the FCA's legal issues and complexities. Ms. Durrell is considered by FCA practitioners as one of the leading *qui tam* attorneys in the country.

**ROLE IN THE INSTANT LITIGATION**

23.     I became involved in what would become the instant litigation in 2018 when Mr. Azorsky was contacted by Lisa Arrowood, Esquire, about a potential *qui tam* case. After discussing the matter with her clients Dr. Zappala, Dr. Lanna, and Mr. Wojcik, reviewing materials provided by them, and conferring with my colleagues Gary L. Azorsky and Casey M. Preston, Mr. Azorsky agreed to serve as co-counsel with Ms. Arrowood in the case.

24.     From that point forward, I worked with my colleagues Azorsky, Preston, Sarola and Poserina to provide the most efficient and helpful services to the Relators. *See, also*, Declarations of Gary L. Azorsky, Lisa G. Arrowood, and Regina D. Poserina. Over the almost 5-year course of this case, Relators' counsel are jointly claiming 1,615.7 hours of merits time, the vast majority of which was spent by myself, Mr. Azorsky, Ms. Arrowood, Sarah E. A. Sousa, and Ms. Poserina.

25.     I was primarily involved in developing the legal theories giving rise to false clams, creating and editing the pre-filing disclosures to the Government and the complaint, research of client and Government identified issues (in particular and at the government's request research on private equity's role in the realm of healthcare), and the settlement process and the attorneys' fees, costs and expenses negotiations. Mr. Azorsky, Ms. Arrowood and Ms. Sousa were similarly involved in these issues and actions. Ms. Poserina worked on the relator's share and attorneys' fees, costs and expenses negotiations.

26.     As noted earlier, Government attorneys commonly enlist the efforts of relators and their counsel in multiple important tasks. Their motivation to do so is animated by doing the best job they can for the Government particularly when resources may be limited. If the Government asks for assistance, it means they need it, and the Government fully expects that the relator and his or her counsel will answer the call and help.

27.     Our team assisted the Government in this investigation throughout its pendency. We reviewed transcripts of the depositions of Steward personnel taken in other litigation, excerpted them for the Government, and sent them detailed analyses of the legal issues involved. At the Government's request, we also engaged in a thorough written analysis of the bases of FCA liability with respect to the private equity defendant Cerberus.

## CONCLUSION

I declare under penalty of perjury that the foregoing is true and correct.


Executed on August 25, 2023

DATED:

_Jeanne A. Markey_
Jeanne A. Markey

RELATORS' PETITION FOR ATTORNEYS' FEES,
COSTS AND EXPENSES

EXHIBIT B-3

ATTACHMENT 1

# COHEN MILSTEIN



# Jeanne A. Markey

OF COUNSEL
Philadelphia, PA

**t:** 267 479 5703
**f:** 267 479 5701
**jmarkey@cohenmilstein.com**

**Practice Areas:**

Whistleblower / False Claims Act

**Admissions:**

Pennsylvania

**Education:**

Cornell Law School, J.D.

Colgate University, B.A., cum laude

**Jeanne A. Markey** is of counsel at Cohen Milstein and a member of the Whistleblower/False Claims Act practice. She has successfully represented whistleblowers in federal and state cases across the country in some of highest-profile *qui tam* litigation in the healthcare, defense, financial services, and education industries. She has also represented whistleblower clients in the public housing sector, in S.E.C. related matters, and in matters involving complex financial instruments.

Representative settled cases include:

- *United States of America et al., ex rel. Lauren Kieff, v. Wyeth:* Ms. Markey was co-lead counsel in this False Claims Act whistleblower case against pharmaceutical giant Wyeth (subsequently acquired by Pfizer), in which the whistleblowers alleged that Wyeth defrauded Medicaid, the joint federal/state healthcare

program for the poor, when it reported falsely inflated prices for its acid suppression drug Protonix from 2001 through 2006 for Medicaid rebate purposes.  Weeks before trial, in February 2016, in one of the largest *qui tam* settlements in U.S. history, Wyeth agreed to pay $784.6 million to the U.S. government and the over 35 intervening states.

- *United States et al. ex relators v. Southern SNF Management, Inc. and Rehab Services in Motion, LLC:* Ms. Markey was lead counsel in this False Claims Act case in which three whistleblowers employed by a chain of skilled nursing facilities located in Florida and Alabama alleged that the chain was engaged in a multi-year scheme of inflating the facilities' Medicare collections by assigning Medicare patients to levels of therapy, (often referred to as "RUG" levels), higher than what was medically reasonable and necessary for that patient. In July 2018 this case settled for $10 million.

- *Ven-A-Care Whistleblower Litigation:* Ms. Markey was involved in a series of Ven-A-Care whistleblower cases which pertained to the inflated reimbursement amounts drug companies were causing Medicare and Medicaid to pay for prescription drugs by reporting inflated wholesale prices to the government. These large, highly-successful groundbreaking cases helped to pave the way for a wide range of subsequent False Claims Act cases in the realm of healthcare and directed at drug companies in particular.

In 2016, Ms. Markey was recognized as one of the top 25 women lawyers in the Commonwealth of Pennsylvania by *The Legal Intelligencer*. In 2018, she, an alumna of Cornell University Law School, was invited to become a member of The President's Council of Cornell Women.

She is also an active member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the Federal False Claims Act and its Qui Tam provisions, and the Association of *qui tam* attorneys.

She frequently speaks about developments in the *qui tam* field and has co-authored several articles about topics including statistical sampling and representing whistleblowers in cases involving issues of medical necessity.

Ms. Markey received her B.A. (*cum laude*) from Colgate University and her J.D. from Cornell University Law School.

## RECENT SUCCESSES

- **USA, ex. rel. O'Connor v. National Spine and Pain Centers, LLC**
- **USA, ex. rel., Lauren Kieff, et al. v. Wyeth**

## AWARDS & RECOGNITION

- Twenty-Three Cohen Milstein Attorneys Named to the 2023 Lawdragon 500 Leading Plaintiff Financial Lawyers List

- Twenty-Two Cohen Milstein Attorneys Named to the 2022 Lawdragon 500 Leading Plaintiff Financial Lawyers List

- Twenty-Four Cohen Milstein Attorneys Named to the 2021 Lawdragon 500 Leading Plaintiff Financial Lawyers List

- Fifteen Cohen Milstein Lawyers Recognized Among the 2020 Lawdragon 500 Leading Plaintiff Financial Lawyers

- Fourteen Cohen Milstein Lawyers Recognized Among the 2019 Lawdragon 500 Leading Plaintiff Financial Lawyers

## AFFILIATIONS

Member, The President's Council of Cornell Women

Member, Taxpayers Against Fraud

## NEWS

- Janssen Must Hand Over Records In Kickback Case – Law360

- Sick Profit: Investigating Private Equity's Stealthy Takeover of Health Care Across Cities and Specialties - Kaiser Health News

- Justice Department Files Lawsuit Alleging Fresenius Charged for Unneeded Access Procedures, Healio

- United States Files Claims Alleging Fresenius Vascular Care, Inc. Defrauded Medicare and Other Healthcare Programs by Billing for Unnecessary Procedures Performed on Dialysis Patients

- New York Files False Claims Act Case Against Fresenius in Whistleblower Suit, Healthcare Dive

- Brooklyn U.S. Attorney Intervenes in False Claims Act Suit Against Dialysis Company, New York Law Journal

- Feds Accuse Fresenius Unit of Fraud Over Repeat Surgeries, Law360

- Steward Health Care System to Settle Medicare and Medicaid Kickback Allegations for $4.7 Million

- Steward Health Care to Settle Kickback Allegations for $4.7 Million after Hingham Doc Blows Whistle, The Patriot Ledger

- DOJ Joins Whistleblower Suit Accusing Fresenius Medical Care of Performing Thousands of Unnecessary Vascular Procedures, Fierce Healthcare

- Federal Government Joins Whistleblower Lawsuit Filed by Two Physicians Against Nationwide Dialysis Company

# PUBLICATIONS

- Preserving Patient Care and Physician Independence in the Age of Private Equity-Owned Healthcare

- Overlooked Law States Can Use to Get Private Equity Out of Health Care Decisions - The Legal Intelligencer

- Cohen Milstein's Whistleblower Group Submits Comment Letter on SEC's Proposed Whistleblower Program Rules, 87 Fed. Reg. 9280 (Feb. 18, 2022)

- Private Equity, Health Care, and Profits: It's Time to Protect Patients - STAT

- Cohen Milstein Whistleblower Group Urges the IRS to Revise Its Information Referral Process to Promote Awareness and Use of Its Whistleblower Program

- Importance of Whistleblowers in False Claims Act Lawsuits – Kaiser Permanente/MAO, The Legal Intelligencer

- NCLC's Federal Deception Law, Chpt. 9, "The Federal False Claims Act and Other Whistleblower Laws," Updated By Gary L. Azorsky and Jeanne A. Markey

- Fraud Is Rampant in Medicare Advantage—Enforcing the False Claims Act Can Help, MedPage Today

- Those Who Learn of Fraud Have an Important Role to Play During Pandemic, The Legal Intelligencer

- 'Cloud of Secrecy' in Medicare Advantage Plans Can Create an Environment for Fraud, STAT

- DOJ Approach to Skilled Nursing Facility Fraud is Affirmed, Law360

© 2023 Cohen Milstein Sellers & Toll PLLC. All rights reserved.

ATTORNEY ADVERTISING. Prior results do not guarantee a similar outcome.

RELATORS' PETITION FOR ATTORNEYS'

FEES, COSTS AND EXPENSES


EXHIBIT B-4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA and THE COMMONWEALTH OF MASSACHUSETTS, *ex rel.* STEPHEN M. ZAPPALA, M.D., OLIVIA LANNA, M.D. and ERIC WOJCIK, <br><br> Plaintiffs, <br><br> vs. <br><br> STEWARD HEALTH CARE SYSTEM, LLC, *et al.,* <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **CASE NO.  18-cv-12125-RGS** |

### DECLARATION OF REGINA D. POSERINA
### IN SUPPORT OF PETITION FOR
### ATTORNEYS' FEES, COSTS, AND EXPENSES

I, Regina D. Poserina, do declare and state as follows:

1.  I file this declaration in support of the Petition of Relators Zappala, Lanna and Wojcik

for an Award of Attorneys' Fees, Costs and Expenses under the False Claims Act, 31 U.S.C.

§3730(d)(1) and (2).  This declaration is based on my own personal knowledge, and all

opinions expressed herein are genuinely held, based on my knowledge and experience. If

called as a witness, I would testify competently to the following matters.

### PROFESSIONAL QUALIFICATIONS

2.  I am an attorney licensed to practice law in the Commonwealth of Pennsylvania

and the State of New Jersey since 1992. Since 1995, I have represented relators in False

Claims Act *qui tam* cases. Since 2020, I have concentrated my practice to exclusively

representing relators in False Claims Act *qui tam* cases and whistleblowers under other

statutes, as Of Counsel at Cohen Milstein Sellers & Toll PLLC, Philadelphia, PA, with

experienced whistleblower lawyers Gary L. Azorsky, Jeanne A. Markey, Casey M. Preston, and Raymond M. Sarola.

    3.    In addition to being a member of the bar in Pennsylvania and New Jersey, I am admitted in the United States Supreme Court, in the U.S. Courts of Appeals for the Third and Eighth Circuit, and in the United States District Courts in the Eastern and Middle Districts of Pennsylvania and New Jersey.

    4.    I graduated from Villanova University School of Nursing in 1984, and Temple University Beasley School of Law in 1992. After graduating from law school, I was employed by Sheller Law, Philadelphia, PA, litigating plaintiff medical and medical product malpractice matters. In December 1994, I established Regina D. Poserina, Attorney at Law, in Upper Darby, PA. In this practice, I represented plaintiffs in general litigation work, including litigating False Claims Act matters.  My FCA cases included frauds occurring in Housing and Urban Development programs, military and GSA contracts, Medicare and Medicaid programs, and USDA nutrition programs.

    5.    From June 2012 to September 2020, I was Of Counsel at Begelman & Orlow, P.C., Cherry Hill, N.J., representing employees in state and federal employment litigation, and relators and whistleblowers in cases under federal and state statutes, including the False Claims Act. My cases included frauds occurring in military and GSA contracts, Medicare and Medicaid programs, and Medicare hospice benefits programs.

    6.    Since September 2020, I have been Of Counsel at Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), Philadelphia, PA, in the Whistleblower group. I continue to litigate and pursue federal and state False Claims Act and other whistleblower matters, including the Securities and Exchange Commission's whistleblower program, the Internal

Revenue Service's whistleblower program, the Anti-Money Laundering Act's whistleblower program, and the National Highway Transportation and Safety Administration's whistleblower program. A more extensive description of my professional credentials and experience can be found on our firm's website at https://www.cohenmilstein.com/professional/regina-d-poserina.

7.   In my capacity as relator's counsel, I have represented whistleblowers in cases which have resulted in False Claims Act settlement recoveries to the United States and states in excess of \$50 million. I have represented whistleblowers nationwide in cases in many different judicial districts including Massachusetts, New York, New Jersey, Florida, Pennsylvania, Washington D.C., and Ohio.

8.   Since 1995, I have been an active member of The Anti-Fraud Coalition (formerly Taxpayers Against Fraud), a public interest non-profit organization dedicated to fighting fraud against the government. Since 2021, I have been a member of TAF's public education committee. Also since 2021, I have been a member of the Federal Bar Association and its *Qui Tam* practice group. I have spoken at national whistleblower attorney conferences on subjects related to the False Claims Act, and written articles about whistleblower issues for websites and publications.

9.   Some of the significant cases I have litigated include:

   a.   *United States ex rel. Dunleavy v. The County of Delaware, et al.* (U.S. D.C. E.D. PA., No. 94-cv-7000) where the United States Supreme Court (538 U.S. 918, 2003) ruled that municipalities are proper defendants and can be held liable under the False Claims Act.

   b.   *U.S. ex rel. Druding et al. v. Care Alternatives*, 962 F.3d 89 (3d Cir. 2020) where the U.S. Court of Appeals for the Third Circuit ruled for the relator,

3

holding that expert testimony can create a genuine dispute of material fact as to

the falsity element of the False Claims Act, a hotly contested issue nationwide.

10. Based on my thirty-one years of legal practice, twenty-eight years of FCA practice, and my interactions with other *qui tam* litigators, I have gained substantial familiarity with the marketplace for *qui tam* and whistleblower legal services. I am familiar with the challenges inherent in *qui tam* litigation, as well as the specialized skills, knowledge, and experience necessary to successfully prosecute such actions, the amount of time, expenses and delays reasonably expected to be incurred in the various stages of the litigation, the hourly rates billed by attorneys on both sides, and the unusually substantial economic risk for relators' attorneys in these cases.

11. FCA cases require constant caselaw review in all appellate jurisdictions and the U.S. Supreme Court to keep up with litigation trends in often unique fact patterns. In that process, I have worked with and become familiar with the legal changes under the False Claims Act.

12. While many complex-litigation lawyers are capable of professionally handling a *qui tam* case, experience in qui tam litigation is a unique qualification which differentiates its practitioners from general complex-litigation attorneys. For counsel and law firms representing whistleblowers, the FCA's statutory fees provision is important and necessary. Because FCA cases frequently span a period of several years, this time cannot be spent working on other cases due to the limitations of resources. Congress considered this issue when they included the statutory fee provisions, which allow relator's counsel to recover for the time put into these rigorous cases.

13. The bulk of the work I performed in this case relates to the FCA statutory fees

4

provision, found at 31 U.S.C. § 3730(d), and negotiations with Defendants as to Relators' right to statutory fees. Caselaw interpreting the FCA statutory fees provision has increased dramatically over the past five to eight years. Few circuit courts have weighed in on the statutory fees provision. Few district courts have weighed the issues raised by the statutory fees section, including whether typical fee shifting caselaw applies to the FCA.

14. I led Cohen Milstein's fees, costs, and expenses negotiations with Defendants. These discussions and negotiations began in June, 2022, and continued until June, 2023. During that time, I communicated with Defendants' attorneys on a regular basis. I spent time researching, writing emails and letters, and communicating with Relators' attorneys, and Defendants' attorneys, on fee dispute issues, including preparing a confidential mediation memorandum. I attended the mediation with Magistrate Judge M. Page Kelley. Once the mediation reached an impasse, I resumed work drafting and preparing Relators' Petition for Attorneys' Fees, Costs and Expenses, including the Attorney Declarations and all related documents. I reviewed and edited Relators' timesheets for clarity and billing judgment, redacting and removing time as necessary.

15. I have expended 138.95 hours on this matter as of July 17, 2023. Seven and a half hours of my time were spent on issues unrelated to attorneys' fees, costs, and expenses issues. The complete summary of my time, up to and including July 17, 2023, is contained in Cohen Milstein's timesheets, attached at Exhibit 2. Time after July 17, 2023, including further work on the Petition, is not included in the timesheets submitted with this Petition, and will be submitted at a later date.

16. The work I have performed in this case was reasonable and ordinarily necessary work performed in support of this False Claims Act attorney. As is described more fully in Mr.

Azorsky's Declaration, and the Petition's Memorandum of Law, the work I performed was necessary to the pursuit of this action, and necessary to obtain attorneys' fees, costs and expenses on behalf of our clients.

I declare under penalty of perjury that the foregoing is true and correct.

Executed August 25, 2023.

*Regina D. Poserina*

Regina D. Poserina

COHEN**MILSTEIN**



# Regina D. Poserina

OF COUNSEL

Philadelphia, PA

**t:** 267.479.5700
**f:** 267.479.5701
**rposerina@cohenmilstein.com**

**Practice Areas:**

Whistleblower / False Claims Act

**Admissions:**

New Jersey

Pennsylvania

**Education:**

Temple University James E. Beasley School of Law, J.D., 1992

Villanova University College of Nursing, B.S., 1984

**Regina D. Poserina** is Of Counsel at Cohen Milstein and a member of the firm's Whistleblower/False Claims Act practice.

Ms. Poserina represents whistleblowers in *qui tam* cases brought throughout the United States under the federal and state False Claims Act statutes against recipients of Government funds.  A retired registered nurse, Ms. Poserina focuses predominantly on representing whistleblowers in healthcare fraud, including Medicare/ Medicaid and nursing home fraud. She also has extensive experience in *qui tams* related to other Governmental programs, including the Department of Defense, Housing and Urban Development, Food Stamp/Department of Agriculture, Small Business Administration, and Department of Education fraud.

Prior to joining Cohen Milstein, Ms. Poserina was Of Counsel at a highly regarded False Claims Act and employment litigation firm in New Jersey and Pennsylvania, and was the sole proprietor of her own firm, focusing on False Claims Act and employment litigation. Ms. Poserina has argued cases before the United States Court of Appeals for the Third Circuit, and successfully briefed a case to the United States Supreme Court. Ms. Poserina's career successes include representing the whistleblowers in *U.S. ex rel. Druding et al v. Care Alternatives*, a precedent setting case involving Medicare hospice care, and in *U.S. ex rel. Dunleavy v. The County of Delaware, et al.,* a case where the United States' Supreme Court ruled on the issue of who can be a proper defendant under the False Claims Act. Ms. Poserina also acted as *amici curiae* for Taxpayers Against Fraud, a nonprofit whistleblowers organization headquartered in Washington, D.C.

She is also an active member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the Federal False Claims Act and its *qui tam* provisions; and the National Employment Lawyers Association and its local chapters.

Ms. Poserina received her B.S. in Nursing from Villanova University and her J.D. from Temple University.

Prior to pursuing a career in law, Ms. Poserina worked as a registered nurse in Intensive Care and Cardiac Surgical Intensive Care Units throughout the United States.

## PROFESSIONAL/COMMUNITY ACTIVITY

Member, Taxpayers Against Fraud

Member, National Employment Lawyers Association

Member, Christ Our Light Justice and Outreach Committee, Cherry Hill, NJ

## NEWS

- **"People in the News—Cohen Milstein," The Legal Intelligencer**

## PUBLICATIONS

- **"How Telehealth Became a Big Target for Fraudsters," TAF Education Fund**

## EVENTS

- **Cohen Milstein's Regina D. Poserina Invited to Speak at Taxpayers Against Fraud Education Fund 21st Annual Conference**
- **Cohen Milstein's Leslie M. Kroeger and Regina D. Poserina Invited to Speak at FJA's 2020 Qui Tam Webinar**
- **Cohen Milstein's Regina D. Poserina Invited to Speak at NELA – New Jersey on Recent Developments Under the False Claims Act**

© 2022 Cohen Milstein Sellers & Toll PLLC. All rights reserved.

ATTORNEY ADVERTISING. Prior results do not guarantee a similar outcome.